**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLARD JAMES HALL,
*Petitioner-Appellee*,

v.

F. W. HAWS,
*Respondent-Appellant.*

No. 14-56159

D.C. No.
3:05-cv-00010-WQH-JMA

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted October 19, 2015
Pasadena, California

Filed July 3, 2017

Before: Harry Pregerson and Consuelo M. Callahan,
Circuit Judges and Stanley Allen Bastian,* District Judge.

Opinion by Judge Harry Pregerson;
Dissent by Judge Callahan

---

*  The Honorable Stanley Allen Bastian, District Judge for the U.S. District Court for the Eastern District of Washington, sitting by designation.

**SUMMARY**[**]

**Habeas Corpus**

The panel affirmed the district court's order granting Willard James Hall's motion to reopen his habeas proceedings under Fed. R. Civ. P. 60(b)(6) and its order conditionally granting Hall's first amended habeas corpus petition challenging his California state-court conviction for first-degree murder unless the State of California grants Hall a new trial within 90 days.

The panel held that Hall's Rule 60(b) motion was not inconsistent with AEDPA's bar on second or successive petitions, AEDPA's statute of limitations, or AEDPA's exhaustion requirement. The panel held that the district court did not abuse its discretion in reopening Hall's case under Rule 60(b)(6), in this extraordinary case involving a petitioner whose habeas petition was dismissed without reaching the merits of his claim, while his co-defendant was granted habeas relief on the same claim based on the same error from the same trial. The panel could not find fault with the district court's determination that Hall, a *pro se* litigant, proceeded diligently or that the delay between the dismissal of his petition and the filing of his motion to reopen was reasonable.

The panel also held that habeas relief is warranted. The panel held that the trial court's use of California Jury Instruction Criminal 2.15, which allowed the jury to infer

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

guilt of murder from evidence that the defendants were in possession of recently stolen property plus slight corroborating evidence, is an error of constitutional magnitude, and that the California Court of Appeal's determination otherwise was objectively unreasonable. The panel held that it was an unreasonable application of clearly established federal law for the California Court of Appeal to evaluate harmlessness under the less stringent standard set forth in *People v. Watson*, 46 Cal.2d 818 (1956), rather than under the more stringent *Chapman v. California*, 386 U.S. 18 (1967), standard for reviewing errors of constitutional magnitude. Analyzing harmlessness pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the panel concluded that the state court's harmless error determination was also unreasonable because the instructional error resulted in actual prejudice, as there are grave doubts about whether the jury would have found Hall guilty beyond a reasonable doubt without the unconstitutional instruction.

Judge Callahan dissented. She wrote that the majority repeats the error of *Sherrors v. Woodford*, 425 F. App'x 617 (9th Cir. 2011), which granted the habeas petition of Hall's co-defendant based on the same supposed error, even in the face of additional facts demonstrating *Sherrors* was wrongly decided. She wrote that the majority ignores that the co-defendant was retried without the suspect instruction and convicted, and invents an error of constitutional magnitude where none exists, brushing aside AEDPA standards and the Supreme Court's repeated instructions to defer to reasonable state court decisions. She also wrote that Hall is not deserving of Rule 60(b) relief, which impermissibly rewards his inaction and gamesmanship, and unfairly imposes the cost of his retrial on the state.

**COUNSEL**

Matthew Mulford, Deputy Attorney General; Kevin Vienna, Supervising Deputy Attorney General; Julie L. Garland, Senior Assistant Attorney General; Office of the Attorney General, San Diego, California; for Respondent-Appellant.

Holly A. Sullivan and Robert H. Rexrode, San Diego, California, for Petitioner-Appellee.

**OPINION**

PREGERSON, Circuit Judge:

This is a rare and extraordinary case. On July 7, 2001, Ronnie Sherrors and Petitioner Willard Hall as co-defendants were convicted of first degree murder in state court. The trial court's jury instructions included California Jury Instruction Criminal ("CALJIC") 2.15, which allowed the jury to infer guilt of murder from evidence that defendants were in possession of recently stolen property plus slight corroborating evidence.

On July 16, 2003, on Sherrors's and Hall's consolidated direct appeal, the California Court of Appeal determined that the trial court erred when it instructed the jury on CALJIC 2.15. *People v. Hall*, No. D038857, 2003 WL 21661225, at *6 (Cal. Ct. App. July 16, 2003) (unpublished). In so concluding, the Court of Appeal relied on *People v. Prieto*, which held that "proof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to the conclusion the defendant committed a rape or murder." 30 Cal. 4th 226, 229 (2003)

(quoting *People v. Barker*, 91 Cal. App. 4th 1166, 1176 (2001)).  The California Court of Appeal, however, affirmed the convictions of Sherrors and Hall applying the *People v. Watson*, 46 Cal. 2d 818, 836 (1956), harmless error standard.

After exhausting state court remedies, Hall filed his own habeas petition in federal court raising a CALJIC 2.15 instructional error claim.  Later Hall quit pursuing this habeas petition because he believed that he "co-submitted" another federal habeas petition with Sherrors.  Sherrors, who filed the petition, was granted habeas relief.  Hall, who had relied on Sherrors to advance their instructional error claim on Hall's behalf, found himself out in the cold.  But the U.S. district court judge William Q. Hayes in San Diego recognized these extraordinary circumstances.   The district court granted Hall's motion to reopen his original habeas proceedings under Federal Rule of Civil Procedure 60(b)(6) and granted Hall's habeas petition consistent with our court's earlier grant of habeas relief to Sherrors.  For the reasons set forth below, we affirm.

## BACKGROUND

Here's the story about how the case came about.  In September 1999, after experiencing financial problems and developing a drug habit, Stephen Foth moved back to his home town of San Diego to "get his life back in order."  Foth's close friend, Grace Ko, permitted him to stay with her.  On the afternoon of September 29, 1999, Foth told Ko he was going to see another friend to borrow some money and would return later.  Foth borrowed Ko's black Audi A4, her cell phone, and her Visa card so that he could put some gas in the car.  The next day, Foth's body was found in a pumpkin

patch. He had bled to death after being stabbed approximately 83 times.

Nine days after the body was found, Lena Hixon told a friend that she witnessed "something . . . pretty bad" and that two men had threatened her life. The friend notified the police after Hixon refused to do so. At first, Hixon told the police that she committed Foth's murder with two men named Benjamin Wilson and Terrence Smallgreen. A few days later, Hixon changed her story and told the police that Ronnie Sherrors and Willard Hall were involved in the murder. Sherrors and Hall were charged with the murder of Stephen Foth.[1] Hixon entered into a plea agreement in which she agreed to plead guilty to assault with a deadly weapon and conspiracy to sell cocaine, and to testify against Sherrors and Hall.

Although inconsistent at times, Hixon's testimony was the key to the prosecution's case. Here is Lena Hixon's story:

On September 29, 1999, Foth approached Hixon and asked if she knew where he could buy some rock cocaine. She did and the two drove in Ko's Audi to an apartment where Sherrors and Hall were living. Hixon, Sherrors, and Hall handled drug sales for Hixon's boyfriend, Michael Washington. Sherrors, Hall, and Foth drove off together in the Audi, leaving her behind. After 15 to 20 minutes, Sherrors and Hall returned in the Audi without Foth. Hixon believed that Foth had loaned the Audi to Sherrors and Hall in exchange for drugs. She got in the Audi with Sherrors and Hall to drive around and smoke some marijuana.

---

[1] Hall and Sherrors were represented by counsel at trial.

After driving around in the Audi with Sherrors and Hall, Sherrors drove off the highway and parked the Audi in a dirt lot. Sherrors and Hall then opened the trunk, from which Foth climbed out. Hixon testified that she demanded to know what was going on, but Sherrors threatened her and grabbed her hands, breaking two of her acrylic fingernails.

Then, Sherrors began to stab Foth, while Foth was tussling with Hall. Sherrors forced Hixon to stab Foth. Sherrors and Hall stripped Foth and threw his body into the bushes. They put Foth's clothes in the trunk and drove away in the Audi. Hixon, Sherrors, and Hall stopped at a gas station convenience store where Hall was thwarted trying to use Foth's ATM card.

Katherine Davis, Hixon's fellow inmate at Los Colinas Women's Detention Center, also testified at trial. Hixon had spoken to Davis on several occasions about the incidents on September 29. In these conversations, Hixon again pointed the finger at Sherrors and Hall, but her story to Davis differed from the story she told to the police. Hixon's story to Davis implied that Hixon was much more involved in the crime than the story she told to the police.

The State's case against Hall relied overwhelmingly on Hixon's story. In addition to Hixon's version of events, the State's evidence against Hall included (1) testimony that Hall was seen sitting in the passenger side of the Audi days after the crime; (2) testimony that Sherrors and Hall had seen a newscast mentioning the Audi, and the next morning the Audi was found burned; and (3) Foth's high school class ring found in a pair of Hall's pants. None of the evidence found at the crime scene—a shirt, a pair of size eight sneakers, a

wristwatch, a broken fingernail, a pair of bloodstained socks, and a shoe print in the soil—was linked to Hall.

Crucial to the federal habeas appeal before us now, at the close of trial, the state jury was instructed on CALJIC 2.15, which states:

> If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant's guilt. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.

> As corroboration, you may consider the attributes of possession, time, place and manner; that the defendant had an opportunity to commit the crime charged; the defendant's conduct; his false or contradictory statements, if any; and any other statements that may have been made with reference to the property.

On July 7, 2001, the jury convicted Sherrors and Hall of first-degree murder. Sherrors and Hall were both sentenced to life without the possibility of parole, plus one year.

## PROCEDURAL HISTORY

On July 16, 2003, on consolidated direct appeal, the California Court of Appeal found that it was error to instruct

the jury pursuant to CALJIC 2.15, but affirmed Sherrors and Hall's convictions under the *People v. Watson*, 46 Cal. 2d 818, 836 (1956), harmless error standard. *People v. Hall*, No. D038857, 2003 WL 21661225, at *6 (Cal. Ct. App. July 16, 2003) (unpublished). The California Supreme Court summarily denied their petitions for review.

On January 3, 2005, Hall filed a *pro se* habeas petition under 28 U.S.C. § 2254 in federal district court. On March 15, 2005, Hall filed his First Amended Petition for Writ of Habeas Corpus. His petition alleged the following claims: (1) the trial court gave an improper modification of jury instruction CALJIC 2.15; (2) the trial court gave an improper modification of jury instruction CALJIC 8.81.17; and (3) the trial court provided an incomplete verdict form to the jury. The California Attorney General's Office and the Warden F.W. Haws ("the State") moved to dismiss the petition on the ground that Hall had failed to exhaust the second claim in state court.

Because Hall had failed to demonstrate good cause for failing to exhaust the second claim, *see Rhines v. Weber*, 544 U.S. 269, 278 (2005), the district court informed Hall on January 25, 2006 of his two options: (1) voluntarily dismiss his entire federal petition and return to state court to exhaust his unexhausted claim, or (2) formally abandon his unexhausted claim and proceed with his two exhausted claims. On February 28, 2006, Hall filed a motion for a 30-day extension to file a formal abandonment, which the district court granted. Thereafter, Hall made no further filings. He did not file a formal abandonment or any other motion. As a result of Hall's failure to comply with the district court's order, the district court dismissed his petition without prejudice on May 19, 2006.

Meanwhile, in 2005, Sherrors, Hall's co-defendant, was also advancing a federal habeas petition, propounding the same CALJIC 2.15 argument as Hall. Hall believed that he was a "co-submitter" in these filings based on Sherrors's representations to him and their history of shared appeals. On November 2, 2007, the district court granted Sherrors's habeas petition, finding that the use of CALJIC 2.15 constituted prejudicial constitutional error. The State appealed to the Ninth Circuit.

On May 29, 2009, Hall filed a "motion to join" Sherrors's case. The district court construed the motion to join as a Rule 60(b) motion to reopen his habeas proceedings. The district court dismissed the motion without prejudice, stating that Hall could re-file within 60 days of receiving notice of the Ninth Circuit's decision in Sherrors's appeal. On August 31, 2011, the State served on Hall a copy of this court's decision in *Sherrors v. Woodford*, 425 F. App'x 617 (9th Cir. 2011), which affirmed the district court's grant of habeas relief to Sherrors.

Within 60 days of receiving notice of our decision in *Sherrors*, Hall re-filed his motion to join Sherrors's case. In his motion, Hall stated that he "had a good faith reason to believe his interests were included in any outcome of [Sherrors's case]" because Sherrors had communicated to Hall and to the district court that the petition was "co-submitted," and because "throughout the state courts [process], counsel for both co-defendants used this language of joinder to ensure that both defendants benefitted from any success through their appeals." After the State opposed the motion, a *pro se* Hall filed a motion to concede to the State's opposition.

On May 22, 2012, the district court appointed counsel for Hall because "a denial of Hall's motion under Rule 60(b) may raise significant due process issues." With the assistance of counsel, Hall filed a motion for relief from judgment under Rule 60(b). Hall argued that applying the district court's May 19, 2006 judgment dismissing his petition prospectively was no longer equitable under Rule 60(b)(5), and that extraordinary circumstances existed under Rule 60(b)(6).

The district court granted Hall's motion under Rule 60(b)(6), finding that extraordinary circumstances—an intervening change in law, i.e., *Sherrors v. Woodford*—warranted relief from judgment. The district court then concluded that habeas relief was warranted based on the erroneous instruction of CALJIC 2.15. The State appealed both the grant of Rule 60(b)(6) relief and habeas relief.

## DISCUSSION

### I. Rule 60(b) Motion

A district court's grant of relief from judgment under Federal Rule of Civil Procedure Rule 60(b) is reviewed for abuse of discretion. *Casey v. Albertson's, Inc*, 362 F.3d 1254, 1257 (9th Cir. 2004). "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id*. Any questions of law underlying the district court's decision are reviewed de novo. *Jeff D. v. Kempthorne*, 365 F.3d 844, 850–51 (9th Cir. 2004).

Under Rule 60(b), a district court may relieve a party from a final judgment in certain circumstances.[2]  Fed. R. Civ. P. 60(b).  In the habeas context, Rule 60(b) applies to the extent that it is not inconsistent with the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005) (citing 28 U.S.C. § 2254 Rule 11 and Fed. R. Civ. P. 81(a)(2)).  AEDPA poses significant hurdles for a Rule 60(b) petitioner, but "Rule 60(b) has an unquestionably valid role to play in habeas cases." *Gonzalez*, 545 U.S. at 534.

---

[2] The district court may relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. Rule 60(b).

The State argues that Hall's Rule 60(b) motion runs afoul of three of AEDPA's provisions: (1) the bar on second or successive petitions under 28 U.S.C. § 2244(b)(1); (2) the one-year statute of limitations under 28 U.S.C. § 2244(d); and (3) the exhaustion rule under 28 U.S.C. § 2254(b). In addition, the State argues that the district court abused its discretion by granting relief under Rule 60(b)(6). For the reasons discussed below, we disagree.

## A. *AEDPA's Bar on Second or Successive Petitions*

Under AEDPA's second or successive petition provisions, any claim that has been adjudicated in a previous petition must be dismissed. 28 U.S.C. § 2244(b)(1). The State argues that Hall's Rule 60(b) motion is a disguised successive habeas petition that asserts a previously adjudicated claim and therefore the district court should have dismissed it pursuant to § 2244(b)(1).

While there is no bright-line rule for distinguishing between a bona fide Rule 60(b) motion and a disguised second or successive habeas petition, the Supreme Court's decision in *Gonzalez v. Crosby* informs our analysis. *See Jones v. Ryan*, 733 F.3d 825, 834 (9th Cir. 2013). In *Gonzalez*, the district court dismissed Gonzalez's habeas petition as untimely, and the Eleventh Circuit Court of Appeals denied a certificate of appealability. 545 U.S. at 527. After a change in law regarding the statute of limitations, Gonzalez filed a Rule 60(b) motion challenging the district court's dismissal. *Id*. Both the district court and the Eleventh Circuit ruled that Gonzalez could not seek Rule 60(b) relief because the motion was a disguised second or successive petition. *Id*. at 528. The Supreme Court disagreed. The Court held that Gonzalez's Rule 60(b) motion challenged the

district court's earlier ruling on a non-merits aspect of the proceedings—statute of limitations—and therefore it was not equivalent to a successive habeas petition. *Id*. at 533–34.

Thus, according to *Gonzalez*, a bona fide Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id*. at 532. In contrast, a second or successive habeas corpus petition "is a filing that contains one or more 'claims,'" defined as "asserted federal bases for relief from a state court's judgment of conviction." *Id*. Put another way, "if neither the motion itself nor the federal judgment from which it seeks relief substantively addresses the federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id*. at 533.

Hall's motion conforms to *Gonzalez's* description of a true Rule 60(b) motion. First, the federal judgment from which Hall seeks relief—the order dismissing his petition for failure to comply with the district court's July 25, 2006 exhaustion order—does not substantively address the federal grounds for setting aside his conviction. The dismissal was based on Hall's failure to comply with the district court's exhaustion order; it was a non-merits-based ruling. Second, Hall's Rule 60(b) motion only explains the circumstances why his original petition was dismissed, i.e. that Hall failed to comply with the court's exhaustion order because he believed he had co-submitted another habeas petition with Sherrors. Hall's motion to reopen does not present any substantive ground for setting his conviction aside. Therefore, because neither the district court's dismissal nor Hall's motion to reopen address the merits for setting Hall's

conviction aside, allowing the motion to proceed is not inconsistent with AEDPA. *Id*. at 533.

Our conclusion is further supported by this court's decision in *Butz v. Mendoza-Powers*, 474 F.3d 1193 (9th Cir. 2007) (per curiam). In *Butz*, Petitioner Butz applied for authorization to file a second or successive habeas petition under 28 U.S.C. § 2254 after his original petition was correctly dismissed for failure to pay the filing fee. 474 F.3d at 1194. Butz claimed that his first petition had been dismissed due to neglect by his prior counsel, despite Butz's own diligence. *Id*. This court held that when "the district court dismisses the [habeas] petition for failure to pay the filing fee *or to comply with the court's orders*, the district court does not thereby reach the 'merits' of the claims presented in the petition and a Rule 60(b) motion challenging the dismissal is not treated as a second or successive petition." *Id*. (emphasis added). Like in *Butz*, Hall "does not seek to add new claims to his petition or to adduce new evidence or cite new law in support of claims previously adjudicated on the merits." *Id*. at 1195. Like in *Butz*, Hall simply failed to comply with the court's order and, as a result, his petition was dismissed. Like in *Butz*, we conclude that the district court's dismissal of the petition does not preclude Hall from filing a Rule 60(b) motion. *See id*. ("Because a Rule 60(b) motion by Butz would not be the equivalent of a second or successive habeas petition, his application for authorization to file such a petition is unnecessary.").**[3]**

---

**[3]** The State attempts to distinguish *Butz* by pointing out that *Butz* (1) arose from a gatekeeping motion filed under 28 U.S.C. § 2244(b)(3)(A); and (2) concerned a procedural dismissal with prejudice rather than a dismissal without prejudice. Nothing in *Butz* suggests that its holding was limited to gatekeeping motions or dismissals with prejudice and the State

In sum, we agree with the district court that Hall's Rule 60(b) motion is a true Rule 60(b) motion and does not run afoul of AEDPA's bar against second or successive petitions.

### B. *AEDPA's Statute of Limitations*

The State argues that even if Hall's Rule 60(b) motion were a true Rule 60(b) motion (meaning it did not raise a "claim" within the meaning of *Gonzalez*), it is still an "application" for relief to which the district court was required to apply AEDPA's statute of limitations before considering any of the discretionary provisions contained in Rule 60(b).[4]  We reject this contention.  As the Supreme Court made clear in *Gonzalez*, an "'application' for habeas relief is a filing that contains one or more 'claims.'" *Gonzalez*, 545 U.S. at 530.  Because Hall's Rule 60(b) motion did not contain any "claim," *supra* I.A.1, it is not an application for habeas relief, and therefore AEDPA's statute of limitations does not apply  *See id*. at 533 ("[W]hen no 'claim' is present, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application.").

---

has offered no argument as to why these two facts were crucial to the court's decision.

[4] The State, relying on a footnote from *Gonzalez*, believes Hall's Rule 60(b) motion to be an "application" because the district court's dismissal of Hall's original petition rested on a correct ruling rather than an erroneous ruling.  In this *Gonzalez* footnote, the Court further explained the term "on the merits," stating that a habeas petitioner does not make a "claim" when he "merely asserts that a previous ruling which precludes a merits determination was in error." *Gonzalez v. Crosby*, 545 U.S. 529, 532 n.4 (2005).  The footnote simply provided an example of when a claim exists; it was not intended as the definition of a claim.

C.  *Exhaustion under AEDPA*

In its reply brief, the State argues that Hall's petition contained an unexhausted claim both before the dismissal and after the district court granted relief under Rule 60(b), and therefore, the use of Rule 60(b) to reopen Hall's case is inconsistent with AEDPA.

It is true that Hall initially presented an unexhausted claim in his habeas petition, which prompted the district court to order Hall to either voluntary dismiss the entire petition or formally abandon the unexhausted claim.  Hall requested an extension to file a formal abandonment, signaling a desire to proceed with the second option.  When Hall contacted the district court again on May 29, 2009 with the intent to "join" his co-defendant's successful habeas petition, Hall mentioned only the CALJIC 2.15 claim, which Hall had already exhausted in state court in 2003.  Hall did not mention the unexhausted claim.  The district court, liberally construing this *pro se* petitioner's motion, interpreted Hall's motion to join as a "motion to reopen his Petition for Writ of Habeas Corpus filed in this case on January 3, 2005 and to proceed on the exhausted first and third claims for relief."  In other words, the district court interpreted Hall's motion to join as both a motion to reopen and a formal abandonment of the second unexhausted claim.  This was a fair and logical interpretation of Hall's motion given the procedural history of the case.  As noted above, Hall had previously indicated a desire to abandon the unexhausted claim.  His "motion to join" confirmed this desire.  Given that no unexhausted claim was presented or considered, we find no inconsistency with AEDPA.

D. *Relief under Rule 60(b)(6)*

As stated above, Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez*, 545 U.S. at 528. Rule 60(b)(6), the provision under which Hall brought his motion, permits reopening for "any . . . reason that justified relief" other than the enumerated reasons set forth in Rule 60(b)(1)–(5).[5] Fed. R. Civ. P. 60(b). A movant seeking relief under Rule 60(b)(6) must show "extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535. Although such circumstances occur rarely in the habeas context, Rule 60(b)(6) can and should be "used sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

"[T]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (quoting *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007)). In applying Rule 60(b)(6) in habeas cases, we have considered six factors described in *Phelps v. Alameida*: (1) a showing of extraordinary circumstances, such as a change in intervening law; (2) the petitioner's exercise of diligence in pursuing the issue during federal habeas

---

[5] Before the district court, Hall also argued for relief under Rule 60(b)(5). The district court did not grant relief under Rule 60(b)(5) and Hall does not argue that it applies now. Therefore, we do not address whether relief under Rule 60(b)(5) would have been appropriate.

proceedings; (3) interest in finality; (4) delay between the finality of the judgment and the motion for Rule 60(b)(6) relief; (5) degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought; and (6) comity. *See id*. at 1135–40. But we have stated that these factors are not "a rigid or exhaustive checklist." *Id*. at 1135. Rather, "Rule 60(b)(6) is a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Id*. (internal citations and quotation marks omitted).

This is an especially unique case in which a perfect storm produced a situation in which Hall would have been subject to "manifest injustice" if not for Rule 60(b)(6). *See Alpine Land & Reservoir Co.*, 984 F.2d at 1049. Most notably, this case involves a petitioner whose habeas petition was dismissed without reaching the merits of his claim, while his co-defendant was granted habeas relief on the same claim based on the same error from the same trial. Given these key facts, Hall's motion for relief under Rule 60(b)(6) is based on more than just a plea that a misunderstanding occurred. These extraordinary circumstances are the reason for Hall's failure to comply with the district court's January 25, 2006 order, and therefore, the reason his petition was dismissed. We cannot say that the district court was wrong in recognizing that extraordinary circumstances warrant the reopening of Hall's case here. *See Buck v. Davis*, 137 S. Ct. 759, 778 (2017) ("In determining whether extraordinary circumstances are present, a court may consider a wide range of factors," including "the risk of injustice to the parties.").

Moreover, we cannot find fault with the district court's determination that Hall proceeded diligently or that the delay between the dismissal of Hall's petition and the filing of his motion to reopen was reasonable. We have said that reasonable diligence "does not require an overzealous or extreme pursuit of any and every avenue of relief;" instead, it "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Brooks v. Yates*, 818 F.3d 532, 535 (9th Cir. 2016) (quoting *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)). Hall, a *pro se* litigant,[6] relied on his co-defendant's assurances that his claims were being advanced in the co-defendant's proceedings. The California Court of Appeal and the California Supreme Court adjudicated Hall's case in conjunction with that of his co-defendant's. With this in mind, and having great familiarity with the procedural history and circumstances of this case, the district court concluded that Hall was diligent and his delay was reasonable.

Further, we disagree with the State's contention that the district court "minimized" the State's interests in finality and comity. In *Sherrors*, this court ruled that the very same trial and resulting conviction was constitutionally compromised. The State could not in good faith argue reliance on the finality of Hall's conviction because there had been no finality for Sherrors, Hall's co-defendant. Accordingly, the State's interest in finality deserved "little weight." *Cf. Buck*, 137 S. Ct. at 779 (noting that the State's interest in finality "deserve[d] little weight" where the State acknowledged error

---

[6] When Hall filed his original federal habeas petition on January 3, 2005, he was *pro se*. Later on, on March 12, 2012, the district court appointed counsel to assist Hall in reopening his habeas proceedings under Rule 60(b).

in similar cases). Similarly, the State cannot argue that a second retrial will harm and prejudice the State. The State received this court's decision affirming the grant of habeas relief in *Sherrors v. Woodford* on March 31, 2011. Thereafter, it chose to oppose Hall's motion to join on December 12, 2011. Had the State truly been concerned with efficiency, it could have opted to retry Sherrors and Hall together in lieu of its opposition to the motion to join and subsequent appeal.

For these reasons, we affirm the district court's grant of Rule 60(b) relief to Hall.

## II. Habeas Relief

### A. *AEDPA Review of the State Court's Instructional Error Determination*

We review a district court's decision on a petition for writ of habeas corpus de novo. *Deck v. Jenkins*, 814 F.3d 954, 978 (9th Cir. 2016). Because Hall's petition is governed by AEDPA, Hall can prevail on a claim that was adjudicated on the merits in state court only if he can show that the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

On direct appeal in Hall's case, the California Court of Appeal determined that it was error to instruct the jury on CALJIC 2.15, but affirmed Hall's conviction, concluding that the error was harmless. In doing so, the California Court of Appeal did not find the error to be of constitutional magnitude, and consequently applied the harmless error standard set forth in *People v. Watson*.[7] As discussed below,

---

[7] The *Watson* standard is used to review non-constitutional, trial type errors. *Watson* requires a reviewing court to determine whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." 46 Cal. 2d 818, 836 (1956). In contrast, the more stringent standard, under *Chapman v. California*, is used to review errors of constitutional magnitude, which requires a reviewing court to decide whether the error was "harmless beyond a reasonable doubt." 386 U.S. 18, 24 (1967).

the California Court of Appeal's decision was an unreasonable application of clearly established federal law.

The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). "This bedrock, axiomatic and elementary constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Id*. (internal quotation marks, citations, and alternations omitted).

In this case, the State used CALJIC 2.15,[8] a jury charge that allows, but does not require, a jury to infer a specified conclusion if the government has proved certain predicate facts, also known as a permissive inference. *Schwendeman v. Wallenstein*, 971 F.2d 313, 316 (9th Cir. 1992). "A permissive inference violates the Due Process Clause only if

---

[8] As a reminder, CALJIC 2.15 states: If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder.  Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant's guilt.  However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.

As corroboration, you may consider the attributes of possession, time, place and manner; that the defendant had an opportunity to commit the crime charged; the defendant's conduct; his false or contradictory statements, if any; and any other statements that may have been made with reference to the property.

the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis*, 471 U.S. at 314; *see also Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 156–57, 165 (1979) (explaining that a lack of "rational connection" between the presumed fact and the proven facts would render such a permissive inference invalid under the Due Process Clause). Put another way, "[a] permissive inference is constitutional so long as it can be said 'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'" *United States v. Rubio-Villareal*, 967 F.2d 294, 296 (9th Cir. 1992) (en banc) (quoting *Ulster Cty.*, 442 U.S. at 166 n.28).

In *People v. Prieto*, the California Supreme Court held that use of CALJIC 2.15 in nontheft offenses is improper because "[p]roof a defendant was in conscious possession of recently stolen property simply does not lead *naturally and logically* to the conclusion the defendant committed a rape or murder." 30 Cal. 4th 226, 249 (2003) (emphasis added) (internal quotations omitted) (quoting *People v. Barker*, 91 Cal. App. 4th 1166, 1176 (2001)). Here, the California Court of Appeal, relying on *Prieto*, held that it was error to instruct the jury on CALJIC 2.15. The California Court of Appeal failed to recognize, however, that the instructional error was of constitutional magnitude.[9]

---

[9] California courts have disagreed that this instructional error is of a constitutional magnitude. *See, e.g.*, *People v. Hayes*, No. D060781, 2013 WL 3187230, at *20 (Cal. Ct. App. June 25, 2013) (unpublished) ("Our Supreme Court has repeatedly held that the *Watson* standard applies in this context, and has expressly rejected the contention that the error in question is one of constitutional magnitude." (internal citations omitted)); *People v. Moore*, 51 Cal. 4th 1104, 1132–33 (2011) (applying the *Watson*

Under clearly established Supreme Court law, the trial court violated Hall's federal due process rights by instructing the jury that it could presume Hall murdered Foth from the fact that Hall possessed Foth's property (plus "slight" corroborating evidence) because the presumed fact does not follow from the facts established. *See Francis*, 471 U.S. at 314–15; *Ulster Cty.*, 442 U.S. 156–57. Although the *Prieto* court did not expressly discuss federal due process, *Prieto* relied on *People v. Barker*, which does discuss it, and *Prieto* used the same sort of language that the Supreme Court used in *Francis* and *Ulster County* to describe when a permissive inference jury instruction is unconstitutional. An inference that is not"natural[] or logical[]," as *Prieto* described, is exactly the kind of inference not justified by "reason or common sense," *see Francis*, 471 U.S. at 314, and not "flow[ing] from the proved fact," *see Ulster Cty.*, 442 U.S. at 166 n.28.

The dissent asserts that the instructional error in this case is only one of state law because *Prieto* never says that the permissive inference from CALJIC 2.15 is "irrational." Dissent at 41–42. But this overly critical argument about word choice misses the point. *Francis* never uses the word "irrational." And while *Ulster County* refers to a "rational connection" between inferred fact and proved fact, 442 U.S. at 156–57, it also explains that whether "the presumed fact is more likely than not to flow from the proved fact" is how we determine whether a permissive inference is constitutional. 442 U.S. at 166 n.28. Ultimately, the seminal Supreme Court cases on this issue all say the same thing: a permissive inference violates due process when the presumed fact does

standard and reasoning that *Prieto* does not mean "drawing a connection between possession and guilt is irrational"). We disagree.

not follow from the facts established. *See Francis*, 471 U.S. at 314–15; *Ulster Cty.*, 442 U.S. at 166 n.28.

The relevant inquiry to determine whether the instructional error was of constitutional magnitude is whether the suggested conclusion—that Hall murdered Foth—is one that reason and common sense justify in light of the proved fact that Hall was in possession of Foth's ring some time after Foth was killed. Proof that Hall possessed Foth's ring does not make it "more likely than not" that Hall murdered Foth. The use of CALJIC 2.15 in this case constitutes an instructional error of constitutional magnitude, and the California Court of Appeal's determination otherwise was objectively unreasonable. *See Ulster Cty.*, 442 U.S. at 166.[10]

---

[10] The dissent argues that the California Court of Appeal did not address Hall's claim that the jury instruction violated the federal constitution, so there is no reasoned decision on that claim. Accordingly, the dissent contends that we should use the gap-filling approach from *Harrington v. Richter*, 562 U.S. 86 (2011), which applies when there is no reasoned decision on a particular claim. We disagree and note that throughout the lengthy litigation of this case, the State never has taken the position that *Harrington* applies.

The *Harrington* gap-filling approach applies when the state court fails to set forth any reasoning for denying a claim. That is not the case here.

In Hall's brief to the California Court of Appeal, he argued that use of CALJIC 2.15 violated due process. Although the dissent contends that the California Court of Appeal addressed only why the use of CALJIC 2.15 was an error of state law, the Court of Appeal's opinion also included grounds for rejecting Hall's constitutional argument. The California Court of Appeal relied on *Prieto*, which in turn relies on *Barker*, a case that discusses when a permissive inference instruction comports with due process. *People v. Barker*, 91 Cal. App. 4th 1166, 1174 (2001). These cases provide enough insight into the state court's reasoning for rejecting Hall's constitutional claim.

B.  Brecht *Harmless Error Review*

But the inquiry does not end the conclusion that the state court's decision was unreasonable in finding no constitutional violation.  Habeas relief on a trial error claim is appropriate only if the error results in "actual prejudice." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Under the *Brecht* test for actual prejudice, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Mays v. Clark*, 807 F.3d 968, 980 (9th Cir. 2015) (quoting *Ayala*, 135 S. Ct. at 2197–98).

The *Brecht* standard is so stringent that it "subsumes" the AEDPA/*Chapman* standard for review of a state court determination of the harmlessness of a constitutional violation.  *Deck v. Jenkins*, 814 at 954, 985 (quoting *Fry v. Pliler*, 551 U.S. 112, 120 (2007)).  We need not apply both a *Brecht* review and an AEDPA/*Chapman* review because "[a] determination that the error resulted in 'actual prejudice' [under *Brecht*] necessarily means that the state court's harmless error determination was not merely incorrect, but objectively unreasonable." *Id*.

---

Regardless, even if we applied the gap-filling approach from *Harrington*, we would still hold that the result reached by the California Court of Appeal was unreasonable.  The hypothetical "arguments or theories" that could have supported the denial of relief are, as the dissent suggests, that the permissive inference in CALJIC 2.15 is not "irrational" so it cannot amount to a violation of due process, or that the instruction was harmless even under *Chapman*.  We have addressed those arguments in the body of our opinion.

Even if we were to separately analyze the state court's harmless error determination under AEDPA/*Chapman* before engaging in a separate *Brecht* analysis, we would find that the California Court of Appeal's harmless error determination was objectively unreasonable. As discussed above, instructing the jury on CALJIC 2.15 violated Hall's due process rights, and therefore harmless error should have been analyzed under the *Chapman* standard for constitutional violations. *See Chapman v. California*, 386 U.S. 18, 23–24 (1967) (holding that a "harmless beyond a reasonable doubt" standard applies to constitutional trial type errors). It was an unreasonable application of clearly established federal law for the California Court of Appeal to evaluate Hall's claim under the less stringent *Watson* standard.

Our *Brecht* analysis also reveals that the state court's harmless error determination was unreasonable because the instructional error resulted in actual prejudice. Like the two magistrate judges, the two district court judges, and another panel majority of our court that have reviewed this trial error under *Brecht*, we have "grave doubts" about whether the jury, without having heard the erroneous CALJIC 2.15 instruction, would have found Hall guilty beyond a reasonable doubt. The State's case against Hall relied overwhelmingly on the testimony of Lena Hixon, whose story changed numerous times before trial and whose statements under oath were contradicted by the objective evidence at trial and by the other witnesses.

First, it is nearly impossible to believe Hixon's testimony of the timeline of events given the judicially noticed distance between the different locations where each event allegedly took place. Second, Hixon lied about using and possessing Foth's property. She testified that she never saw, touched, or

took any of Foth's property or used Foth's cell phone. But phone records showed that days after the murder, Hixon used Foth's phone to call a customer and her fingerprints were found on some of Foth's belongings. In addition, months after the crime, a woman by the name of Mikiisha Perine found incriminating items among those she was storing on behalf of Hixon's boyfriend, Michael Washington. Perine found a blue purse containing Hixon's social security card, Ko's Visa and Costco cards, Foth's ATM card, and three of Foth's business cards. Third, Hixon downplayed her own involvement in the crimes. Initially, Hixon denied ever stabbing Foth. Then, she told police that she did stab Foth once, but that Sherrors forced her to stab Foth. Then, she told fellow inmate Katherine Davis that she used her shirt over the knife to avoid leaving fingerprints and that she was surprised at how the knife felt as it went into the body. In addition, Hixon testified that she broke a fingernail when Sherrors grabbed her at the crime scene, but later she told Davis she broke it while she was holding Foth down or helping drag his body. Lastly, Hixon lied or changed her story regarding several other details of the night of the murder. Most notably, Hixon first identified two other men as the killers, but later pointed her finger at Sherrors and Hall. She also told police that Foth approached her for cocaine, but she told Davis that Foth approached her for sex. She also testified that a shirt found at the crime scene belonged to Sherrors, but forensic testing eliminated Sherrors, Hall, and Hixon as habitual wearers of the shirt.

Given these non-trivial inconsistencies, the jury could have disbelieved Hixon entirely. After all, she had a motive to lie; she was offered a plea agreement in exchange for her testimony against Sherrors and Hall. Aside from Hixon, the only other evidence against Hall was his possession of Foth's

ring and his presence as a passenger in the Audi. No physical evidence linked Hall to the murder.

CALJIC 2.15 invited and encouraged the jury to infer that Hall was guilty of murder from his possession of Foth's ring plus "slight" corroborating evidence. The instruction defined "slight" corroborating evidence as the "attributes of possession (time, place and manner), opportunity to commit the crime, and defendant's conduct." This allowed the jury to infer that Hall committed the murder based on the "time, place, and manner" of his possession; in other words, the jury may have been encouraged to infer that Hall committed the murder based on the mere fact that he was in possession of the ring and a passenger in the Audi in the days after the murder. As already discussed, such an inference is illogical and improper. Because Hixon's testimony was unbelievable and because of the lack of other evidence linking Hall to the murder, we have grave doubts about whether the jury would have found Hall guilty beyond a reasonable doubt without the unconstitutional permissive instruction.[11]

---

[11] This court previously drew this conclusion in the case of Hall's co-defendant, Sherrors. *See Sherrors v. Woodford*, 425 F. App'x 617 (9th Cir. 2011). Though *Sherrors* is an unpublished memorandum disposition that is not binding on us, it is quite persuasive because the analysis arose from the very same trial. In fact, the State concedes that it assumed that our decision in *Sherrors* would be binding and that "if it were not for *Johnson v. Williams*, the State may not have taken this appeal." We disagree that *Johnson* changes the result in this case.

In *Johnson*, the Supreme Court held that when a state court addresses some, but not all, of a defendant's claims, the federal court on habeas review must presume, subject to rebuttal, that the unaddressed claims were adjudicated on the merits, thereby warranting AEDPA deference. 133 S. Ct 1088, 1091 (2013). Our decision in *Sherrors* was consistent with this. In *Sherrors*, we applied AEDPA deference and concluded that the

## CONCLUSION

We conclude that Hall's Rule 60(b) motion was not inconsistent with AEDPA's bar on second or successive petitions, AEDPA's statute of limitations, or AEDPA's exhaustion requirement. The district court did not err in reviewing Hall's Rule 60(b) motion and it did not abuse its discretion in reopening Hall's case under Rule 60(b)(6). Further, we conclude that habeas relief is warranted. Therefore, we AFFIRM the district court's order granting Hall's motion to reopen under Rule 60(b) and we AFFIRM the district court's order that conditionally granted the First Amended Petition for Writ of Habeas Corpus unless the State grants Petitioner a new trial within 90 days from the date of this opinion.

**AFFIRMED**.

California Court of Appeal unreasonably applied established Supreme Court precedent when it "failed to recognized that the instructional error was of constitutional magnitude." *Sherrors*, 425 F. App'x at 619. The State misinterprets the intent of this sentence. We were not saying that the California Court of Appeal failed to address the instructional error claim. We were saying that its failure to find a constitutional violation was unreasonable. And we say the same here.

CALLAHAN, Circuit Judge, dissenting:

I agree with the majority that this case is "rare and extraordinary for the reasons it cites. What is extraordinary is that this court repeats the error of *Sherrors v. Woodford*, 425 F. App'x 617 (9th Cir. 2011), which granted the habeas petition of Hall's co-defendant Ronnie Sherrors based on the same supposed instructional error, even in the face of additional facts demonstrating that *Sherrors* was wrongly decided. Sherrors was retried without the suspect instruction and, unsurprisingly, was again convicted of first degree murder and sentenced to life imprisonment without the possibility of parole. *People v. Sherrors*, 2014 WL 6907990, at \*1 (Cal. Ct. App. Dec. 9, 2014). In granting Hall's petition, the court not only ignores this reality, but invents an error of constitutional magnitude where none exists. To be sure, the instructional error Hall claims is an error of state law only. In finding a due process violation warranting habeas relief, the majority brushes aside the AEDPA standards and the Supreme Court's repeated instructions that we must defer to reasonable state court decisions. *See, e.g.*, *Davis v. Ayala*, 135 S. Ct. 2187, 2199, *reh'g denied*, 136 S. Ct. 14 (2015). The weighty evidence against Hall only underscores the extent to which the majority contrives to reach its result.

Nor is Hall deserving of relief under Rule 60(b). Hall knowingly caused his own petition to be dismissed, and, of his own accord, failed to take any action on that dismissed federal habeas petition *for three years*. Indeed, he waited until after Sherrors procured habeas relief before seeking leave to reopen his own case. The state explained at oral argument that, because Hall had clearly abandoned his own efforts to pursue habeas relief, he was not retried with Sherrors. Reopening his case impermissibly rewards his

inaction and gamesmanship, and unfairly imposes the cost of his retrial on the state.

I therefore respectfully dissent.

I

Hall and Sherrors stole a car that Steve Foth was driving. They forced Foth into the trunk of the car and drove out to a dark street. There, accompanied by Lena Hixon, they pulled Foth out of the trunk and began stabbing him. Foth sustained approximately eighty-three stab wounds and bled to death. Hall and Sherrors stripped Foth's body naked, discarded it in some bushes, and drove away.

Hall and Sherrors were tried and convicted in state court of first degree murder while using a deadly weapon, and with the special circumstance of murder during the course of a robbery. At trial, the jury was instructed with CALJIC No. 2.15, which states:

> If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant's guilt. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.

> As corroboration, you may consider the attributes of possession—time, place and manner; that the defendant had an opportunity to commit the crime charged; the defendant's conduct; his false or contradictory statements, if any; and any other statements that may have been made with reference to the property.

Each defendant received a sentence of life without the possibility of parole, plus one year.

Hall appealed the judgment to the California Court of Appeal, which affirmed the judgment in an unpublished decision. The Court of Appeal assessed whether it was error to have instructed the jury pursuant to CALJIC No. 2.15, but assessed this error under the harmless error test of *People v. Watson*, 46 Cal. 2d 818 (1956), California's state-law harmless error standard, rather than the constitutional harmless error test of *Chapman v. California*, 386 U.S. 18 (1967). The Court of Appeal concluded that it was an error of state law, but that error was harmless. The opinion did not touch on Hall's federal due process claim. Hall then filed a petition for review in the California Supreme Court, arguing that the Court of Appeal erred by applying *Watson* rather than *Chapman*. The California Supreme Court summarily denied the petition.

In 2005, Hall filed a Petition for Writ of Habeas Corpus in the district court pursuant to 28 U.S.C. § 2254, challenging his conviction. He then filed a First Amended Petition which raised not only his claim related to CALJIC No. 2.15, but also an additional claim related to a different jury instruction, CALJIC No. 8.81.17. When the state moved to dismiss the petition on the ground that the claim related to CALJIC No.

8.81.17 was unexhausted, Hall requested that the district court stay his case so that he could present his unexhausted claim to the state courts. This request was denied. The district court advised Hall that he could either "voluntarily dismiss his entire federal petition and return to state court to exhaust his unexhausted claims," or "formally abandon his unexhausted claim and proceed with his exhausted claims." Hall was explicitly informed by the district court that if he chose to proceed with his exhausted claims, "he must file a pleading entitled 'Formal Abandonment of Unexhausted Claim' with this Court no later than 30 days after the District Judge issues his decision." The district court informed Hall that he was "presented with the options stated above to avoid dismissal of his petition." Hall requested an extension of time to file a formal abandonment of his unexhausted claim, which was granted. But Hall never submitted a notice of formal abandonment or any other filing in response to the district court's order. Hall's mixed petition was therefore dismissed without prejudice and the case was terminated.

Hall's co-defendant Sherrors also filed a Petition for Writ of Habeas Corpus in 2005, challenging his own conviction. In May 2007, well after the dismissal of Hall's petition, the district court conditionally granted the writ, and the state appealed that decision. It was not until almost two years later—and over three years after the district court's dismissal of Hall's petition—that Hall filed a "Motion to Join Case of Co-Defendant" in the district court. The district court treated this filing as a motion to reopen Hall's original habeas petition. The district court deemed "consideration of the matter" premature while the decision granting Sherrors's petition was on appeal, and denied the motion "without prejudice to refile the motion once the Court of Appeals for the Ninth Circuit issues a final decision in Sherrors's habeas

case." When the Ninth Circuit affirmed the district court's decision to grant Sherrors's petition in 2011, *Sherrors*, 425 F. App'x 617; *see also id.* at \*3 (Callahan, J., dissenting), Hall filed a "Motion to Join Case of Co-Defendant; Motion to Re-Open Case of Hall v. B. Cash" in the district court, seeking relief under Rule 60. The state opposed the motion, contending that Hall should be required to file a new petition. Hall, at that point proceeding pro se, filed a reply indicating that he would file a new petition. The court appointed counsel to represent Hall, and directed that Hall file a supplemental Motion to Re-Open Under Rule 60(b). Hall, through counsel, then filed a supplemental motion seeking relief under Rule 60(b)(6). The district court afforded Hall relief under Rule 60(b)(6), and found that habeas relief was warranted. The state appealed.

## II

Rule 60(b)(6) entitles the moving party to relief from judgment for "any other reason that justifies relief" and a motion invoking this rule must be filed "within a reasonable time . . . after the entry of the judgment." Fed. R. Civ. P. 60(b)(6), (c)(1). Our precedent is clear that "[w]e use Rule 60(b)(6) '*sparingly* as an equitable remedy to prevent manifest injustice.'" *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (emphasis added) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)). The Supreme Court has held, and we have recently reiterated, that "[t]o justify relief under Rule 60(b)(6), a party must show external 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Washington v. Ryan*, 833 F.3d 1087, 1099 (9th Cir. 2016) (en banc) (quoting

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)); *see also Gonzales v. Crosby*, 545 U.S. 524, 535 (2005).

Hall does not come close to showing a "good reason for failing to take the action sooner," *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985), or that he is "faultless in the delay," *Washington*, 833 F.3d at 1099. Quite to the contrary, the record indicates that the fault lies with him alone. The majority's characterization of this case as involving a "perfect storm" which "produced a situation in which Hall would have been subject to 'manifest injustice' if not for Rule 60(b)(6)," Op. at 19, is beyond generous; it is inventive. It was not outside forces, but Hall's own conduct (or lack thereof), that "produced" this situation. Hall failed to notify the district court in 2006 of how he wished to proceed despite receiving notice that his petition would be dismissed if he did not affirmatively select one of the two options presented to him. Sherrors allegedly continued to advise Hall that he was filing "writs and motions" with Hall's name included as a "co-submission." Hall also asserts that he had a "good faith reason to believe his interests were included in any outcome of [Sherrors's case]." But nothing in the record indicates that Hall held this belief at the time he failed to file a formal abandonment or otherwise take action on his own petition. And although both the district court and the majority accept Hall's assertion that Sherrors's habeas petition was originally submitted to the district court on behalf of both Hall and Sherrors, reference to Sherrors's habeas petition reveals no such co-submission. *See* Case No. 3:05-cv-01262-IEG-LSP, District Court Docket No. 1. What is more, Hall waited *over three years* to take action to join Sherrors's case.

Granting Rule 60(b)(6) relief under these circumstances not only contradicts our Rule 60 jurisprudence but blithely accepts Hall's excuses for his inaction. Indeed, the conclusion that these facts "are the reason for Hall's failure to comply with the district court's January 25, 2006 order" finds no support in the record. Op. at 19. Hall alone bears the responsibility for the dismissal of his case and his three-year delay in seeking to reopen it. These facts compel me to conclude that the district court abused its discretion in finding "extraordinary circumstances" warranting relief under Rule 60(b)(6).

III

The majority compounds its mistake by finding an error of constitutional magnitude where none exists. "The Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). This principle "prohibits the [s]tate from using evidentiary presumptions in a jury charge that have the effect of relieving the [s]tate of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Id.* (citations omitted). "A permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts. Although such an instruction does not shift the burden of proof, it violates due process 'if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.'" *United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994) (quoting *Francis*, 471 U.S. at 314–15). An instructional error rises to the level

of a constitutional violation if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citations omitted).

Here, the California Court of Appeal addressed the merits of Hall's instructional-error claim only as an error of state law, and found that any error was harmless under *Watson*, 46 Cal. 2d 818. The California Court of Appeal did not expressly address Hall's claim that this instructional error violated his due process rights. Hall then petitioned to the California Supreme Court, claiming that the Court of Appeal erred in applying *Watson*, 46 Cal. 2d 818, rather than *Chapman*, 386 U.S. at 24. The California Supreme Court summarily denied Hall's petition.

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . .'" *Johnson v. Williams*, 568 U.S. 289, 133 S. Ct. 1088, 1096 (2013). Here, we may assume that Hall's due process claim was adjudicated on the merits, although neither the California Court of Appeal nor the California Supreme Court expressly addressed it. The Supreme Court has directed that *Harrington v. Richter*, 562 U.S. 86 (2011), governs our analysis in this circumstance. *Williams*, 133 S. Ct. at 1096. Thus, "[u]nder § 2254(d)," we "must determine what arguments or theories . . . *could have supported* . . . the state court's decision; and then . . . must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of this Court."[1] *Harrington*, 562 U.S. at 102 (emphasis added).

Hall does not come close to satisfying this standard. The Court of Appeal could have determined that the permissive inference instruction given at Hall's trial did not so infect the entire trial that his conviction violates due process, and fairminded jurists could disagree about the correctness of this determination. In reaching the opposite conclusion, the majority "collaps[es] the distinction between 'an *unreasonable* application of federal law' and what [the majority] believes to be 'an *incorrect* or *erroneous* application of federal law.'" *Nevada v. Jackson*, 133 S. Ct.

---

[1] The majority contends that *Harrington* does not apply because the Court of Appeal's analysis under the *Watson* standard indicates that it determined that there was no constitutional error. The majority further contends that the court's citation to *People v. Barker*, 91 Cal. App. 4th 1166 (2001), provides sufficient "insight into the state court's reasoning for rejecting Hall's constitutional claim." Op. at 26 n.10. But the citation to *Barker* tells us nothing about the Court of Appeal's reasons for denying the federal claim, since *Barker* finds that giving CALJIC No. 2.15 implicates a defendant's federal due process rights, 91 Cal. App. 4th at 1174–76 (assessing error under *Chapman* standard), while *Prieto* implicitly rejects that conclusion, 30 Cal. 4th at 249. Accordingly, we cannot treat this citation as a "reasoned" decision on Hall's due process claim. *Cf. Curiel v. Miller*, 830 F.3d 864, 870 (9th Cir. 2016).

Moreover, the majority's analysis contradicts the clear holding of *Williams*, 133 S. Ct. at 1096. In *Williams*, the Supreme Court instructed that where, as here, a state court considers a petitioner's federal claim but does not "expressly acknowledge" it, the reviewing federal court must assess the state court's decision under *Harrington*. *Williams*, 133 S. Ct. at 1093, 1096. This is true even if the state court cites to the controlling federal standard, or cites cases which reference federal law. *Id.* at 1093, 1098–99.

1990, 1994 (2013) (emphasis in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

*People v. Prieto*, 30 Cal. 4th 226 (2003), does not support the conclusion that giving CALJIC No. 2.15 violated Hall's due process rights. Instead, *Prieto* found that "application of CALJIC No. 2.15 to nontheft offenses like rape and murder" is improper under California state law. *Id.* at 248. The *Prieto* court explained that the instruction was an error under state law because "'proof a defendant was in conscious possession of recently stolen property simply does not lead *naturally and logically* to the conclusion the defendant committed' a rape or murder." *Id.* at 249 (emphasis added) (quoting *People v. Barker*, 91 Cal. App. 4th 1166, 1176 (2001)).[2] By contrast, a permissive inference instruction "is constitutional so long as the inference would not be *irrational*." *Yates v. Evatt*, 500 U.S. 391, 402 n.7 (1991) (emphasis added) (citing

---

[2] *Prieto*'s citation to *Barker* is revealing, but not for the reasons given by the majority. *See* Op. at 25. Indeed, the *Prieto* court appears to have considered, and rejected, *Barker*'s conclusion that instructing the jury with CALJIC No. 2.15 on a murder charge implicates a defendant's due process rights. 30 Cal. 4th at 248–49. *Prieto* also rejected the argument that CALJIC No. 2.15 violated due process by creating a mandatory inference, as it found that "nothing in the instruction absolved the prosecution of its burden of establishing guilt beyond a reasonable doubt." 30 Cal. 4th at 248; *see generally Sandstrom v. Montana*, 442 U.S. 510, 521–24 (1979). The court looked to the jury instruction requiring that the prosecution prove the elements of the offense beyond a reasonable doubt, and stated that the trial court gave "other instructions properly instruct[ing] the jury on its duty to weigh the evidence, what evidence it may consider, how to weigh that evidence, and the burden of proof" such that "there is 'no possibility' that [the instruction] reduced the prosecution's burden of proof in this case." 30 Cal. 4th at 248. This discussion further evidences that the *Prieto* court considered, and rejected, the proposition that giving CALJIC No. 2.15 is an error of constitutional significance.

*Francis*, 471 U.S. at 314–15). An inference may be "rational" without "flowing naturally and logically," and the constitutional error standard thus presents a lower hurdle for an instruction to clear.

The California Supreme Court reached this same conclusion when it considered whether CALJIC No. 2.15 created an improper permissive inference in violation of a defendant's due process rights. *People v. Moore*, 51 Cal. 4th 1104, 1132 (2011). The *Moore* court explained: "Although we concluded in *Prieto* that the connection between a defendant's guilt of nontheft offenses and his or her possession of property stolen in the crime is not sufficiently strong to warrant application of the slight corroboration rule, this *does not mean* that drawing a connection between possession and guilt is *irrational*." *Id.* (emphasis added). The court stated that it "[could not say], therefore, that it would have been *irrational* for the jury . . . to draw an inference of defendant's guilt of the . . . murders from his possessing their property soon after the murders when there was other slight corroboration of guilt, especially when it is likely the same person or persons who killed the victims also took their belongings." *Id.* (emphasis in original) (citation omitted). This reasoning, although not binding on this court, is logically sound, and supports a finding that the state court could have reasonably determined that giving the jury CALJIC No. 2.15 was not a constitutional error, and that fairminded jurists could disagree with the correctness of this result.

The majority concludes the opposite, and finds that the jury instruction violated Hall's due process rights. Op. at 24–26. The majority finds not only that the state court erred in concluding that this error was one of state law only, but

that this decision was objectively unreasonable. Op. at 26. In doing so, the majority repeats the error that we are so often criticized for, and "treat[s] the unreasonableness question as a test of its confidence in the result it would reach under de novo review . . . ." *Harrington*, 562 U.S. at 102.

The majority's conclusion further ignores that we "determine the constitutionality of a permissive inference instruction on a case-by-case basis," in the context of the trial at issue. *United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994) (citing *Ulster County v. Allen*, 442 U.S. 140, 162–67 (1979)). Reviewing the record evidence makes clear that it is rational to infer, from the evidence that Hall had Foth's property in the days following Foth's murder and the other corroborating evidence presented at trial, including Hixon's detailed testimony, that Hall killed Foth. This inference is "one that reason and common sense justify in light of the proven facts before the jury," and thus there was no constitutional violation. *Francis*, 471 U.S. at 315.

Accordingly, the state court did not err, let alone unreasonably apply clearly established federal law, in rejecting Hall's claim that instructing the jury with CALJIC No. 2.15 was a constitutional error. To the contrary, giving the jury this instruction was an error of state law only.

IV

Even assuming that instructing the jury with CALJIC No. 2.15 was not simply an error of state law, but was an error of constitutional magnitude, Hall is still not entitled to relief because any error was harmless.

Establishing that giving the jury CALJIC No. 2.15 violated his due process rights requires Hall to show both that the instruction's "suggested conclusion [was] not one that reason and common sense justif[ied] in light of the proven facts," *Warren*, 25 F.3d at 897, and that giving the instruction was not harmless beyond a reasonable doubt, *see, e.g.*, *Chapman*, 386 U.S. at 24. Just as the state court's denial of Hall's federal claim could have been supported by the theory that giving CALJIC No. 2.15 was not a constitutional error, it also could have been supported by the theory that any constitutional error was harmless beyond a reasonable doubt.[3] And, as the Supreme Court made clear in *Ayala*, when a state court determines that an error was harmless beyond a reasonable doubt, that determination is entitled to AEDPA deference. 135 S. Ct. at 2199. We must therefore ask "whether it is possible fairminded jurists could disagree" with the correctness of the state court's denial of Hall's federal claim on the theory that any error was harmless beyond a reasonable doubt. *Harrington*, 562 U.S. at 102.

Of course, because this is a collateral proceeding, we must apply not only the AEDPA/*Chapman* standard of review, but also the standard set forth by *Brecht v. Abrahamson*, 507 U.S. 619 (1993), which requires a petitioner to establish "actual prejudice." *Id.* at 637. When assessing a state court's harmlessness determination under

---

[3] Again, although the California Court of Appeal assessed harmlessness, it did so under the *Watson* standard, and addressed only whether the error was one of state law. The California Supreme Court issued a summary denial of Hall's federal claim. As explained above, when a state court's determination of a federal claim is unaccompanied by a reasoned decision, we "must determine what arguments or theories . . . *could have* supported . . . the state court's decision . . . ." *Harrington*, 562 U.S. at 102 (emphasis added); *Williams*, 133 S. Ct. at 1096.

this test, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Ayala*, 135 S. Ct. at 2197–98 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). "There must be more than a 'reasonable possibility' that the error was harmful." *Id.* at 2198 (quoting *Brecht*, 507 U.S. at 637). This standard "reflects the view that a 'State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error.'" *Id.* (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)).   Importantly, as the Supreme Court cautioned us in *Ayala*, the *Brecht* standard does not "somehow abrogate[] the limitation on federal habeas relief that § 2254(d) plainly sets out." *Id.* While we "need not 'formally' apply both *Brecht* and AEDPA/*Chapman*,' AEDPA . . . 'sets forth a precondition to the grant of habeas relief.'" *Id.* (quoting *Fry v. Pliler*, 551 U.S. 112, 119–20 (2007)). Thus, it is not enough to find actual prejudice under the *Brecht* standard; the *Chapman*/AEDPA standard must also be met, and we must therefore accept a state court's prior harmless error determination unless it involved such an "unreasonable" application of Supreme Court precedent that "no fairminded jurist" could agree with it. *Ayala*, 135 S. Ct. at 2199.

The majority applies the wrong standard, and in doing so, fails to afford the state court the deference it is due. The majority's error here is threefold.  It first ignores *Harrington* and *Williams*, and fails to ask what arguments *could have* supported the state court's decision.  It then repeats the error of *Deck v. Jenkins*, 814 F.3d 954 (9th Cir. 2016), and states that it need not review the state court's decision for

reasonableness under *Chapman* because "[a] determination that the error resulted in 'actual prejudice' [under *Brecht*] necessarily means that the state court's harmless error determination was not merely incorrect, but objectively unreasonable," Op. at 27. *Cf. Deck*, 814 F.3d at 959–60 (Bea, J., dissenting from denial of reh'g en banc). And finally, hedging its bets, the majority purports to engage in an assessment of harmless error under *Chapman*, but concludes that because the California Court of Appeal reviewed the alleged error under *Watson* rather than *Chapman*, its harmlessness determination was objectively unreasonable. Op. at 28. Then, having dismissed the state court's harmlessness determination, the majority engages in a de novo review under *Brecht* to conclude that the supposed instructional error resulted in actual prejudice to Hall. Op. at 28–30. This circular logic fails to afford the proper deference to the theory of harmlessness that reasonably supported the state court's denial of Hall's federal claim.

Indeed, the overwhelming evidence presented at trial that Hall murdered Foth underscores that it would have been entirely reasonable for the state court to reject Hall's federal claim on the basis that the error was harmless. Lena Hixon testified in detail about the manner in which Hall and Sherrors committed the murder, and her testimony was corroborated by, and consistent with, other evidence presented at trial. The prosecution also admitted evidence that Hixon told a fellow inmate that she had held Foth down as Sherrors and Hall stabbed him, and that the three of them— Hixon, Sherrors, and Hall—had robbed Foth and killed him, leaving him naked in the bushes. The prosecution introduced evidence corroborating and supporting Hixon's account of the murder. Foth's body was found naked. An autopsy report revealed that Foth sustained eighty-three stab wounds. When

police arrested Sherrors and Hall, they found Foth's class ring in a pair of Hall's pants. Sherrors and Hall kept Foth's car for several days, claiming it belonged to Hixon's mother. The burned and destroyed car was found near Hall and Sherrors's apartment the day after the two men saw a news report describing the car. Someone unsuccessfully attempted to use Foth's ATM card at 8:56 PM the night of the murder, and someone used a cell phone in Foth's possession to call a pager owned by Hixon's boyfriend, Michael Washington. When Hall and Sherrors were arrested and searched, the police found Washington's pager number in Sherrors's pocket. Each of these pieces of evidence provides corroboration for Hixon's testimony.

Hixon's testimony also accounts for specific details of Foth's murder. For example, responding officers found a number of items at the scene, including a broken fingernail and a watch. Hixon testified that when Hall and Sherrors initially let Foth out of the trunk of the car, Sherrors had grabbed her hands, breaking two of her acrylic fingernails. She also testified that after the murder, Sherrors mentioned dropping his watch at the scene. Evidence showed that Foth's ATM card was unsuccessfully used that night; Hixon testified that, following the murder, the trio attempted to use Foth's ATM card at a convenience store.

Moreover, while the California Court of Appeal applied only the *Watson* harmless-error standard in assessing the instruction's prejudicial effect, its sound reasoning provides further support for concluding that the denial of Hall's federal claim was reasonable. The California Court of Appeal asked "whether the error [was] prejudicial, i.e., whether it is

reasonably likely the jury would have reached a different result if the court had not given the instruction." The court held:

> We answer this question in the negative. CALJIC No. 2.15 specifically instructed the jurors that they could not infer guilt of murder from the defendants' possession of recently stolen property absent corroborating evidence of guilt. The inference of guilt addressed in CALJIC No. 2.15 is permissive, not mandatory, and thus the jury was entitled to credit, or reject, the inference based on its evaluation of the evidence.

It further observed that the jurors were instructed that they needed to find the elements of each crime, and the special circumstances, beyond a reasonable doubt. Most importantly, the court determined that because the jury found true the special circumstance that the defendants committed the murder during the commission of a robbery, it was clear that the jury had "accepted the substance of Hixon's testimony regarding the defendants' involvement in the incident," and, "[b]ased on Hixon's testimony, there is no reasonable likelihood that [the jury] would have rendered a verdict more favorable to the defendants had the court omitted this instruction."

By contrast, the majority walks through what it deems to be the flaws in Hixon's testimony, stating that it is "nearly impossible to believe" her account "of the timeline of events," that she "lied about using and possessing Foth's property," that she "downplayed her own involvement in the crimes," and that she "lied or changed her story regarding

several other details of the night." Op. at 28–29. Adding up these invented shortcomings, the majority concludes that the jury "*could* have disbelieved Hixon," and "*may* have been encouraged to infer that Hall committed the murder based on the mere fact that he was in possession of the ring and the Audi in the days after the murder." Op. at 29–30. These speculations do not show that the theory of harmlessness that may have supported the state court's rejection of Hall's due process claim was unreasonable. *See Ayala*, 135 S. Ct. at 2198–99. Indeed, the majority's musings overlook that the jury was presented with the flaws in Hixon's testimony and chose to believe her not only when they convicted Sherrors and Hall the first time, but again when they convicted Sherrors at his retrial.

The fact that Sherrors was retried without the erroneous instruction and was again convicted of first degree murder only confirms that any error in giving CALJIC No. 2.15 was harmless. At Sherrors's retrial, the jury again found true that he committed the crime during the commission of a robbery, and he was again sentenced to life in prison without the possibility of parole. *People v. Sherrors*, 2014 WL 6907990, at *1 (Cal. Ct. App. Dec. 9, 2014). We therefore need not wonder what might have happened if Hall was tried without the erroneous instruction. Sherrors's reconviction affirms that the state court's rejection of Hall's due process claim was an entirely reasonable application of controlling precedent, and that any error in giving the jury CALJIC No. 2.15 in Hall's trial did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

V

Hall's years-long inaction precludes him from demonstrating the type of extraordinary circumstances required for relief under Rule 60(b)(6). And, even assuming that such relief were warranted, Hall has not shown that the permissive inference created by CALJIC No. 2.15 violated his due process rights. Finally, even accepting that instructing the jury with CALJIC No. 2.15 amounted to a constitutional error, the instruction did not actually prejudice Hall. These serious errors will result in California having to retry a defendant who is undoubtedly guilty of the murder he committed.

It bears repeating that "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. That standard is not met here. The majority's decision to the contrary disregards not only binding precedents, but the Supreme Court's numerous admonitions to this circuit that it adhere to AEDPA's stringent standards.

I therefore respectfully dissent.