MEMORANDUM *
The State of California appeals the grant of habeas relief to Ronnie Sherrors, who was convicted of murder, Cal.Penal Code § 187(a), the use of a deadly weapon, id. § 12022(b)(1), and the special circumstance of murder during the commission of a robbery, id. § 190.2(a)(17). The State argues that the district court erred in holding that there are grave doubts as to whether a jury instruction used at Sher-rors’s trial had a substantial and injurious effect or influence on the jury’s verdict. Reviewing the district court’s analysis de novo, Lambert v. Blodgett, 393 F.3d 943, 964-65 (9th Cir.2004), we affirm the grant of the conditional writ.[1]
It is undisputed that the instruction at the heart of this case, based on California Jury Instructions (“CALJIC”) No. 2.15, involves a permissive inference — namely, that the jury could (but was not required to) infer that Sherrors had killed the victim, Steven Foth, from: (1) Sherrors’s post-murder possession of Foth’s Audi A4, plus (2) “slight” corroborating evidence. After Sherrors’s conviction, but before the California Court of Appeal decided his direct appeal, the California Supreme Court held that CALJIC No. 2.15 should not be used in the context of nontheft offenses such as rape or murder. People v. Prieto, 30 Cal.4th 226, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (2003). The Prieto Court explained that while a suspect’s knowledge and conscious possession of the victim’s stolen property is compelling evidence that the suspect committed a theft offense, “the same is not true for nontheft offenses like rape or murder.” Id. at 249, 133 Cal. Rptr.2d 18, 66 P.3d 1123 (citing People v. Barker, 91 Cal.App.4th 1166, 1176, 111 Cal. Rptr.2d 403 (2001)); Barker, 91 Cal.App.4th at 1176, 111 Cal.Rptr.2d 403 (explaining that when CALJIC No. 2.15 is “given with regard to murder, the court is essentially singling out the fact of possession of recently stolen property as one that, if the jury finds it, will support a murder conviction with merely slight corroborating evidence.”).
Prieto did not contain a discussion of the federal due process implications of using CALJIC No. 2.15. It did, however, recognize that the use of this instruction in the context of nontheft offenses permitted the jury to draw conclusions that did not flow “naturally” or “logically” from the evidence presented. See 30 Cal.4th at 249, 133 Cal.Rptr.2d 18, 66 P.3d 1123. Although Prieto was not framed in terms of the right to due process guaranteed by the federal Constitution, it was correct in reasoning that the presumed conclusion does not follow from the facts established. Un *619 der clearly established Supreme Court law, it violated Sherrors’s right to due process to instruct the jury that it could presume that Sherrors murdered Foth from the fact that Sherrors possessed Foth’s property, plus “slight” corroborating evidence, because the presumed fact does not follow from the facts established. See Francis v. Franklin, 471 U.S. 307, 314-15, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); Cnty. Court of Ulster Cnty., New York v. Allen, 442 U.S. 140, 156-57, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
Although the dissent asserts that “[t]he instructional error in this case is only one of state law” under Prieto, see Dissent at 2, it never attempts to explain why “the suggested conclusion” — that Sherrors murdered Foth — is “one that reason and common sense justify in light of the proven fact[ ]” that Sherrors was in possession of Foth’s automobile in the days after Foth was killed. Francis, 471 U.S. at 314-15, 105 S.Ct. 1965; see also United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir.1992) (en banc) (“A permissive inference is constitutional so long as it can be said ‘with substantial assurance’ that the inferred fact is ‘more likely than not to flow from the proved fact on which it is made to depend.’ ” (quoting Ulster Cnty., 442 U.S. at 166 n. 28, 99 S.Ct. 2213)). Because proving Sherrors possessed Foth’s automobile does not make it “more likely than not” that Sherrors murdered Foth, using CALJIC No. 2.15 in this case was an instructional error of constitutional magnitude. Id.
The California Court of Appeal, relying on Prieto, recognized that the trial court had erred in instructing the jury with CALJIC No. 2.15 in Sherrors’s case, but then applied a nonconstitutional standard to evaluate whether the error was harmless.[2] In other words, the Court of Appeal failed to recognize that the instructional error was of constitutional magnitude; this error amounts to an unreasonable application of clearly-established Supreme Court law. 28 U.S.C. § 2254(d)(1); see Francis, 471 U.S. at 314-15, 105 S.Ct. 1965; Ulster Cnty., 442 U.S. at 156-57, 99 S.Ct. 2213.
Due to the state court’s error, we conduct an independent harmless error review pursuant to Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). That review “requires a court to determine whether the constitutional error had substantial and injurious effect or influence in determining the jury’s verdict.” Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir.1996) (citation and quotation marks omitted). “When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had ‘substantial and injurious effect or influence in determining the jury’s verdict,’ that error is not harmless. And, the petitioner must win.” O’Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (quoting Brecht, 507 U.S. at 627, 113 S.Ct. 1710).[3]
*620 We, like the district court, have grave doubt regarding whether the instructional error had a substantial and injurious effect or influence on the jury’s verdict.[4] The State’s case against Sherrors relied overwhelmingly on the testimony of Lena Hix-on, an accomplice whose story changed numerous times before trial and whose statements under oath were repeatedly contradicted by the objective evidence at trial. Indeed, the magistrate judge called her testimony “simply unbelievable.” Given the numerous contradictions and changing stories, the jury could well have chosen to disbelieve Hixon entirely.[5] Besides Hixon, the other key witness for the prosecution was Latrina Walker, Sherrors’s 24-year-old mentally-disabled sister, who testified that she had been drinking and smoking marijuana the evening of the murder. Additionally, Walker’s mother and aunt both testified that she was untruthful and unreliable. In light of these reasons to doubt her accuracy as a witness, the jury well could have chosen not to believe Walker’s account.[6]
No direct evidence linked Sherrors to Foth’s murder. Instead, the State only had evidence that linked Hixon to the murder, Sherrors to Hixon, and Sherrors to Foth’s Audi in the days following Foth’s death. CALJIC No. 2.15 invited the jury to infer that Sherrors was guilty of murder from his possession of stolen property plus “slight” corroborating evidence. The “slight” corroborating evidence, the jury was instructed, could have been that Sher-rors was present in the general vicinity on the day in question, that he had “an opportunity to commit the crime charged,” or just “statements that may have been made with reference to the property.” As a result, it is entirely possible that the jury convicted Sherrors of first degree murder even if it disregarded most or even all of Hixon’s and/or Walker’s questionable testimony about Sherror’s involvement in the murder, and would not have found Sher-rors guilty beyond a reasonable doubt without the instruction.
The dissent suggests that the instructional error was cured by the trial court’s instructions on the particular elements of the crimes charged and the beyond a reasonable doubt standard. See Dissent at 4. But these general instructions simply “could not overcome the misdirection of a specific instruction that permitted the jury to find an element of the crime without *621 considering all the evidence.” Rubio-Vil-lareal, 967 F.2d at 300. “[Jjuries are presumed to follow their instructions,” Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), and therefore we must assume that the jury took seriously what it was told in this case: that it could convict Sherrors of murder if it found that he was in possession of Foth’s vehicle, plus “slight” corroborating evidence. Given the weaknesses in the State’s case against Sherrors, such an instruction effectively relieved the prosecution of its burden of proof on the murder charge against Sherrors, and thereby violated his right to due process.
For the foregoing reasons, the district court’s conditional grant of Sherrors’s petition for the writ of habeas corpus is AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Sherrors, who had proceeded pro se before the district court, later noticed a cross-appeal regarding some of the claims raised in his federal habeas petition that the district court rejected. Because Sherrors's cross-appeal presents no basis for any further or additional relief, we do not reach it.

. Under People v. Watson, 46 Cal.2d 818, 299 P.2d 243 (1956), California courts review "non-constitutional magnitude, trial type errors” to ascertain whether it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. Bains v. Cambra, 204 F.3d 964, 971 n. 2 (9th Cir.2000); Watson, 46 Cal.2d at 836, 299 P.2d 243. By contrast, California courts review errors of constitutional magnitude under the clearly-established federal standard set forth in Chapman v. California. See 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (requiring the reviewing court to decide whether the error was "harmless beyond a reasonable doubt”).

. The harmless error review required under Brecht is expressly independent of that of the state court. For this reason, the dissent’s contention that deference is owed to the state court’s harmless error analysis is simply wrong as a matter of law. Harrington v. *620 Richter, which addressed the deference owed to the state court's application of the Strickland standard for ineffective assistance of counsel claims under AEDPA review, is not to the contrary. See - U.S. -, 131 S.Ct. 770, 785-87, 178 L.Ed.2d 624 (2011). The dissent's reliance on Harrington is, accordingly, misplaced.

. The dissent contends that we "whittle[] and sculpt[] the evidence to fashion an instructional error of constitutional magnitude.” See Dissent at 3. We do no such thing; rather, we examine the evidence “on its own terms.” Id. We have engaged in the very process mandated by Supreme Court precedent and required by "the sound and established principles that inform [the] proper issuance” of the writ of habeas corpus. Harrington, 131 S.Ct. at 780.

. The dissent asserts that Hixon’s "testimony was corroborated by, and consistent with, other evidence in the case.” Dissent at 3. That is a significant overstatement. Indeed, the only portions of Hixon’s testimony that were corroborated are facts that no one disputes: that Hixon was at the scene of the murder and that she had contact with Sher-rors at some point before or after Foth was killed.

. A third witness, who was five years old at the time of the murder and seven at trial, testified that not only did he see blood on Sherrors’s shirt and shoes the night Foth was killed, but that he saw Foth dismembered by men with ninja swords. The jury certainly could have discredited him entirely as well.