**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROWAN BROOKS, *Petitioner-Appellant*, <br><br> v. <br><br> JAMES A. YATES, Warden, *Respondent-Appellee*. | No. 12-17607 <br><br> D.C. No. 1:11-cv-01315-LJO-JLT <br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
January 5, 2016—San Francisco, California

Filed March 28, 2016

Before: J. Clifford Wallace, Alex Kozinski,
and Diarmuid F. O'Scannlain, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Kozinski

## SUMMARY[*]

### Habeas Corpus

The panel affirmed in part and reversed in part the district court's denial of California state prisoner Rowan Brooks's motion for relief from judgment under Fed. R. Civ. P. 60(b) following the dismissal of his habeas petition as untimely, and remanded.

The panel held that the district court did not abuse its discretion in holding that Brooks failed to demonstrate that he was entitled to Rule 60(b) relief under a theory of "actual innocence." The panel wrote that assuming *arguendo* that the "*Schlup* gateway" is available to support a Rule 60(b) motion, Brooks has fallen well short of raising sufficient doubt about his guilt to undermine confidence in the result of the trial. The panel noted further that the declarations Brooks sent to offer as evidence of actual innocence were not "new" for purposes of Rule 60(b).

The panel held that the district court abused its discretion in finding that Brooks was not abandoned by his counsel. The panel explained that the question with respect to Brooks's Rule 60(b) motion is not whether his counsel, Gregory Mitts, abandoned Brooks for purposes of equitable tolling, but whether extraordinary circumstances prevented Brooks from taking timely action to prevent or correct an erroneous judgment. The panel held that the record demonstrates that Mitts was grossly negligent in his

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

representation of Brooks at the time the district court ordered Brooks to show cause why his petition should not be dismissed as untimely.

The panel observed that the district court did not make findings with respect to whether Brooks acted diligently in pursuing relief from the district court's judgment dismissing his petition, a requirement for relief under Rule 60(b)(6), and remanded for the district court to make such a determination.

Concurring, Judge Kozinski wrote separately to highlight that Mitts continues to practice law in California with no mark on his record that would apprise prospective clients of the grave risks of hiring him to represent them.

## COUNSEL

Peggy Sasso, Assistant Federal Defender, Fresno, California, argued the cause and filed the brief for the petitioner-appellant. With her on the brief was Heather E. Williams, Federal Defender.

David Andrew Eldridge, Deputy Attorney General, Sacramento, California, argued the cause and filed the brief for the respondent-appellee. With him on the brief was Kamala D. Harris, Attorney General of California, Michael P. Ferrell, Senior Assistant Attorney General, and Brian G. Smiley, Supervising Deputy Attorney General.

## OPINION

PER CURIAM:

Rowan Brooks, currently serving an indeterminate sentence of twenty-five years to life in a California state prison for first-degree murder, appeals from the denial of his motion for relief from judgment under Federal Rule of Civil Procedure 60(b) following the district court's dismissal of his habeas petition as untimely. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

## I

The district court did not abuse its discretion in holding that Brooks failed to demonstrate that he was entitled to Rule 60(b) relief under a theory of "actual innocence." "[W]here an otherwise time-barred habeas petitioner demonstrates that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, . . . his constitutional claims [may be] heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)).

Brooks has failed to cite any cases where actual innocence was held to constitute an "extraordinary circumstance" for Rule 60(b)(6) purposes. Assuming arguendo that the "*Schlup* gateway" is available to support a Rule 60(b) motion, Brooks has fallen well short of raising "sufficient doubt about [his] guilt to undermine confidence in the result of the trial." *Schlup*, 513 U.S. at 317.

Furthermore, the declarations Brooks seeks to offer as evidence of actual innocence were available when he filed his initial habeas petition. Such evidence was thus not "new" for purposes of Rule 60(b). *See Hamilton v. Newland*, 374 F.3d 822, 825 (9th Cir. 2004).

## II

### A

"[G]ross negligence by counsel amounting to 'virtual abandonment' can be an 'extraordinary circumstance' that justifies [relief under] Rule 60(b)(6)." *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012) (alteration omitted) (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169–71 (9th Cir. 2002)). In such circumstances, "a petitioner may be excused from the consequences of his attorney's conduct where that conduct effectively severs the principal-agent relationship." *Foley v. Biter*, 793 F.3d 998, 1002 (9th Cir. 2015).

Here, the district court abused its discretion in finding that Brooks was not abandoned by his counsel, Gregory Mitts. The district court focused its inquiry on Mitts's performance leading up to the habeas petition's late filing and determined that because Mitts's miscalculation of the filing deadline was "[s]imple attorney negligence," Brooks was not entitled to equitable tolling. This was not the proper inquiry. The question with respect to Brooks's Rule 60(b) motion is not whether Mitts abandoned Brooks for purposes of equitable tolling, an inquiry that would involve analyzing the entire course of Brooks's federal habeas proceedings. *Cf. Rudin v. Myles*, 781 F.3d 1043, 1056–59 (9th Cir. 2014) (evaluating the availability of equitable tolling for separate time periods

in post-conviction proceedings); *Luna v. Kernan*, 784 F.3d 640, 650–51 (9th Cir. 2015) (describing the "stop clock" approach). Instead, the proper inquiry is whether "extraordinary circumstances prevented [Brooks] from taking timely action to prevent or correct an erroneous judgment," *see Foley*, 793 F.3d at 1002 (quoting *Hamilton*, 374 F.3d at 825)—the relevant judgment being the district court's ultimate dismissal of the petition.

The record demonstrates that Mitts was grossly negligent in his representation of Brooks at the time the district court ordered Brooks to show cause why his petition should not be dismissed as untimely. *See Mackey*, 682 F.3d at 1251. Mitts neither responded to the order, nor even notified his client that it had been issued, despite repeated inquiries from Brooks about the status of his petition. Having received no response to the order to show cause, the district court entered judgment dismissing the petition as untimely.[1] Mitts's behavior was not mere negligence, but rather virtual abandonment—"neglect so gross that it is inexcusable" and thus "vitiat[es] the agency relationship that underlies our general policy of attributing to the client the acts of his attorney." *Id.* (alteration in original) (quoting *Cmty. Dental Servs.*, 282 F.3d at 1168, 1171).

---

[1] It was only through his wife that Brooks discovered that his petition had been untimely filed and ultimately dismissed. In response to Brooks's subsequent chastisement of Mitts and demand that Mitts rectify the situation, Mitts incorrectly "explained that the statute of limitations for filing the petition [was] jurisdictional and there was nothing that could be done to cure the late filing."

**B**

Even where a petitioner is abandoned by counsel, the petitioner must also show that he diligently pursued his rights before relief can be granted under Rule 60(b)(6). *See Gonzalez v. Crosby*, 545 U.S. 524, 537–38 (2005); *Foley*, 793 F.3d at 1004.

Here, the district court did not make findings with respect to whether Brooks was reasonably diligent. The State argues that Brooks is not entitled to relief under Rule 60(b)(6) because Brooks found out about the final order dismissing his habeas petition as untimely within three days of the entry of judgment, yet did not invoke available remedies such as a Rule 59(e) motion or appeal.

Reasonable diligence "does not require an overzealous or extreme pursuit of any and every avenue of relief"; instead, it "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). On remand the district court must determine whether Brooks acted diligently in pursuing relief from the district court's judgment dismissing his petition.

**III**

We grant Brooks's motion to take judicial notice of state court trial documents but deny it with respect to letters received from counsel and drafts of letters sent to counsel.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

KOZINSKI, Circuit Judge, concurring:

I join and applaud the majority's sound disposition. I write separately in fulfillment of our venerable obligation "to the public [to issue] a civil reprehension of advocates, where there appeareth cunning counsel [or] gross neglect." Francis Bacon, *Essays, Civil and Moral in* 3 *Harvard Classics* 7, 139 (Charles W. Eliot ed., 1909). As the principal opinion demonstrates, Brooks's federal habeas counsel, Gregory H. Mitts, satisfied *both* of these categories by ignoring Brooks's communications, missing deadlines and then concealing his dereliction. In doing so, he jeopardized his client's chance to obtain federal habeas relief. Maj. at 6. Yet Mitts continues to practice law in California with no mark on his record that would apprise prospective clients of the grave risks of hiring him to represent them. *See Attorney Search: Gregory Henrick Mitts - #71981*, State Bar of California, http://members.calbar.ca.gov/fal/Member/Detail/71981 (last visited Mar. 7, 2016).

The facts are even worse than one would gather from reading the majority opinion. After Mitts was retained in March 2010, Brooks apparently sent a letter (not in the record) suggesting how the case might be handled. In October, Mitts sent an imperious response admonishing Brooks not to "micromanage" the case from prison. The letter also mentioned offhand that the California Supreme Court had denied Brooks's pending post-conviction relief petition, but didn't say when. Nevertheless, Mitts assured Brooks that he was "aware of the time constraints attendant to" filing his federal habeas petition.

That turned out to be untrue. Brooks's federal habeas deadline expired just *days* after Mitts wrote to Brooks, but

Mitts sat on his thumbs. Over the next year, Mitts systematically ignored a stream of letters that Brooks sent inquiring about the status of his case. In May 2011, Brooks wrote to Mitts pointing out his "lack of regular communication" and asking Mitts to call him at the prison. Brooks wrote again the following month, explaining that Mitts's silence was "extremely frustrating." Having heard nothing, Brooks wrote yet again in July. To facilitate a response, Brooks enclosed questions to which Mitts could provide "yes/no" answers and brief explanations. Brooks begged Mitts to "*PLEASE* ANSWER THESE QUESTIONS AND MAIL THEM . . . WITHIN *2 WEEKS*." Brooks continued to send letters to Mitts approximately once a month over the next four months. In August, he reminded Mitts of his responsibility to "be in contact and communicate with [your] client" and mentioned that he had been waiting "almost a year" for responses to his "11 previous letters." In October, Brooks sent Mitts an "urgent" letter imploring him to communicate, even if it meant referring him to a paralegal.

In August 2011, ten months after the deadline expired, Mitts finally deigned to file a federal habeas petition, apparently without notifying Brooks. When the district court issued an order to show cause as to why the petition shouldn't be dismissed as untimely, Mitts didn't file a response or notify Brooks of the order. Mitts later explained that he did not respond to the show-cause order because he couldn't contest the court's untimeliness finding. When the magistrate judge recommended that the petition be dismissed, Mitts didn't object. The district court thus entered final judgment on a habeas petition that Brooks didn't even know had been filed on his behalf. Mitts has never explained why he missed the filing deadline by almost a year, or why he did not notify

his client immediately of the default and subsequent court orders.

Lawyers make mistakes, including missing deadlines. It is nothing to be proud of but it does happen from time to time and doesn't usually amount to misconduct. But lawyers have a responsibility to communicate with their clients and keep them reasonably apprised of the status of their cases. They must also notify them promptly of significant developments, which, of course, include the sinking of the case. The client can then make an informed choice whether to continue with the lawyer who caused the default or hire another lawyer who can effectively argue the first lawyer's ineptitude.

A lawyer who comports himself as Mitts did is not only a hazard to clients, but also a menace to the profession and to the courts. Mitts's actions consumed countless hours of this court's and the district court's time in dealing with his obstinate incompetence. If Mitts was so lackadaisical in Brooks's case, we can only imagine what problems he's caused, or is likely to cause, other clients. Potential clients, who will put their lives in Mitts's hands, as Brooks did, are entitled to know that this lawyer ignores client inquiries, misses jurisdictional deadlines and does not own up to his mistakes.

I am unaware of any disciplinary action currently underway to address what appears to have been misconduct by Mitts. The State Bar of California may not yet be aware of Mitts's behavior. Perhaps now it will be.