Dissent by Judge CALLAHAN
OPINION
PREGERSON, Circuit Judge:
This is a rare and extraordinary ease. On July 7, 2001, Ronnie Sherrors and Petitioner Willard Hall as co-defendants were convicted of first degree murder in state court. The trial court’s jury instructions included California Jury Instruction Criminal (“CALJIC”) 2.15, which allowed the jury to infer guilt of murder from evidence that defendants were in possession of re *981 cently stolen property plus slight corroborating evidence.
On July 16, 2003, on Sherrors’s and Hall’s consolidated direct appeal, the California Court of Appeal determined that the trial court erred when it instructed the jury on CALJIC 2.15. People v. Hall, No. D038857, 2003 WL 21661225, at *6 (Cal. Ct. App. July 16, 2003) (unpublished). In so concluding, the Court of Appeal relied on People v. Prieto, which held that “proof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to the conclusion the defendant committed a rape or murder.” 30 Cal. 4th 226, 229, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (2003) (quoting People v. Barker, 91 Cal. App. 4th 1166, 1176, 111 Cal.Rptr.2d 403 (2001)). The California Court of Appeal, however, affirmed the convictions of Sherrors and Hall applying the People v. Watson, 46 Cal. 2d 818, 836, 299 P.2d 243 (1956), harmless error standard.
After exhausting state court remedies, Hall filed his own habeas petition in federal court raising a CALJIC 2.15 instructional error claim. Later Hall quit pursuing this habeas petition because he believed that he “co-submitted” another federal ha-beas petition with Sherrors. Sherrors, who filed the petition, was granted habeas relief. Hall, who had relied on Sherrors to advance their instructional error claim on Hall’s behalf, found himself out in the cold. But the U.S. district court judge William Q. Hayes in San Diego recognized these extraordinary circumstances. The district court granted Hall’s motion to reopen his original habeas proceedings under Federal Rule of Civil Procedure 60(b)(6) and granted Hall’s habeas petition consistent with our court’s earlier grant of habeas relief to Sherrors. For the reasons set forth below, we affirm.
BACKGROUND
Here’s the story about how the case came about. In September 1999, after experiencing financial problems and developing a drug habit, Stephen Foth moved back to his home town of San Diego to “get his life back in order.” Foth’s close friend, Grace Ko, permitted him to stay with her. On the afternoon of September 29, 1999, Foth told Ko he was going to see another friend to borrow some money and would return later. Foth borrowed Ko’s black Audi A4, her cell phone, and her Visa card so that he could put some gas in the car. The next day, Foth’s body was found in a pumpkin patch. He had bled to death after being stabbed approximately 83 times.
Nine days after the body was found, Lena Hixon told a friend that she witnessed “something ... pretty bad” and that two men had threatened her life. The friend notified the police after Hixon refused to do so. At first, Hixon told the police that she committed Foth’s murder with two men named Benjamin Wilson and Terrence Smallgreen. A few days later, Hixon changed her story and told the police that Ronnie Sherrors and Willard Hall were involved in the murder. Sherrors and Hall were charged with the murder of Stephen Foth.[1] Hixon entered into a plea agreement in which she agreed to plead guilty to assault with a deadly weapon and conspiracy to sell cocaine, and to testify against Sherrors and Hall.
Although inconsistent at times, Hixon’s testimony was the key to the prosecution’s case. Here is Lena Hixon’s story:
On September 29, 1999, Foth approached Hixon and asked if she knew where he could buy some rock cocaine. She *982 did and the two drove in Ko’s Audi to an apartment where Sherrors and Hall were living. Hixon, Sherrors, and Hall handled drug sales for Hixon’s boyfriend, Michael Washington. Sherrors, Hall, and Foth drove off together in the Audi, leaving her behind. After 15 to 20 minutes, Sherrors and Hall returned in the Audi without Foth. Hixon believed that Foth had loaned the Audi to Sherrors and Hall in exchange for drugs. She got in the Audi with Sher-rors and Hall to drive around and smoke some marijuana.
After driving around in the Audi with Sherrors and Hall, Sherrors drove off the highway and parked the Audi in a dirt lot. Sherrors and Hall then opened the trunk, from which Foth climbed out. Hixon testified that she demanded to know what was going on, but Sherrors threatened her and grabbed her hands, breaking two of her acrylic fingernails.
Then, Sherrors began to stab Foth, while Foth was tussling with Hall. Sher-rors forced Hixon to stab Foth. Sherrors and Hall stripped Foth and threw his body into the bushes. They put Foth’s clothes in the trunk and drove away in the Audi. Hixon, Sherrors, and Hall stopped at a gas station convenience store where Hall was thwarted trying to úse Foth’s ATM card.
Katherine Davis, Hixon’s fellow inmate at Los Colinas Women’s Detention Center, also testified at trial. Hixon had spoken to Davis on several occasions about the incidents on September 29. In these conversations, Hixon again pointed the finger at Sherrors and Hall, but her story to Davis differed from the story she told to the police. Hixon’s story to Davis implied that Hixon was much more involved in the crime than the story she told to the police.
The State’s case against Hall relied overwhelmingly on Hixon’s story. In addition to Hixon’s version of events, the State’s evidence against Hall included (1) testimony that Hall was seen sitting in the passenger side of the Audi days after the crime; (2) testimony that Sherrors and Hall had seen a newscast mentioning the Audi, and the next morning the Audi was found burned; and (3) Foth’s high school class ring found in a pair of Hall’s pants. None of the evidence found at the crime scene — a shirt, a' pair of size eight sneakers, a wristwatch, a broken fingernail, a pair of bloodstained socks, and a shoe print in the soil — was linked to Hall.
Crucial to the federal habeas appeal before us now, at the close of trial, the state jury was instructed on CALJIC 2.15, which states:
If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant’s guilt. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.
As corroboration, you may consider the attributes of possession, time, place and manner; that the defendant had an opportunity to commit the crime charged; the defendant’s conduct; his false or contradictory statements, if any; and any other statements that may have been made with reference to the property.
On July 7, 2001, the jury convicted Sher-rors and Hall of first-degree murder. Sher-rors and Hall were both sentenced to life without the possibility of parole, plus one year.
PROCEDURAL HISTORY
On July 16, 2003, on consolidated direct appeal, the California Court of Appeal found that it was error to instruct the jury *983 pursuant to CALJIC 2.15, but affirmed Sherrors and Hall’s convictions under the People v. Watson, 46 Cal. 2d 818, 836, 299 P.2d 243 (1956), harmless error standard. People v. Hall, No. D038857, 2003 WL 21661225, at *6 (Cal. Ct. App. July 16, 2003) (unpublished). The California Supreme Court summarily denied their petitions for review.
On January 3, 2005, Hall filed a pro se habeas petition under 28 U.S.C. § 2254 in federal district court. On March 15, 2005, Hall filed his First Amended Petition for Writ of Habeas Corpus. His petition alleged the following claims: (1) the trial court gave an improper modification of jury instruction CALJIC 2.15;. (2) the trial court gave an improper modification of jury instruction CALJIC 8.81.17; and (3) the trial court provided an incomplete verdict form to the jury. The California Attorney General’s Office and the Warden F.W. Haws (“the State”) moved to dismiss the petition on the ground that Hall had failed to exhaust the second claim in state court.
Because Hall had failed to demonstrate good cause for failing to exhaust the second claim, see Rhines v. Weber, 544 U.S. 269, 278, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), the district court informed Hall on January 25, 2006 of his two options: (1) voluntarily dismiss his entire federal petition and return to state court to exhaust his unexhausted claim, or (2) formally abandon his unexhausted claim and proceed with his two exhausted claims. On February 28, 2006, Hall filed a motion for a 30-day extension to file a formal abandonment, which the district court granted. Thereafter, Hall made no further filings. He did not file a formal abandonment or any other motion. As a result of Hall’s failure to comply with the district court’s order, the district court dismissed his petition without prejudice on May 19, 2006.
Meanwhile, in 2005, Sherrors, Hall’s co-defendant, was also advancing a federal habeas petition, propounding the same CALJIC 2.15 argument as Hall. Hall believed that he was a “co-submitter” in these filings based on Sherrors’s representations to him and their history of shared appeals. On November 2, 2007, the district court granted Sherrors’s habeas petition, finding that the use of CALJIC 2.15 constituted prejudicial constitutional error. The State appealed to the Ninth Circuit.
On May 29, 2009, Hall filed a “motion to join” Sherrors’s case. The district court construed the motion to join as a Rule 60(b) motion to reopen his habeas proceedings. The district court dismissed the motion without prejudice, stating that Hall could re-file within 60 days of receiving notice of the Ninth Circuit’s decision in Sherrors’s appeal. On August 31, 2011, the State served on Hall a copy of this court’s decision in Sherrors v. Woodford, 425 Fed.Appx. 617 (9th Cir. 2011), which affirmed the district court’s grant of habeas relief to Sherrors.
Within 60 days of receiving notice of our decision in Sherrors, Hall re-filed his motion to join Sherrors’s case. In his motion, Hall stated that he “had a good faith reason to believe his interests were included in any outcome of [Sherrors’s case]” because Sherrors had communicated to Hall and to the district court that the petition was “co-submitted,” and because “throughout the state courts [process], counsel for both co-defendants used this language of joinder to ensure that both defendants benefitted from any success through their appeals.” After the State opposed the motion, a pro se Hall filed a motion to concede to the State’s opposition.
On May 22, 2012, the district court appointed counsel for Hall because “a denial of Hall’s motion under Rule 60(b) may raise significant due process issues.” With *984 the assistance of counsel, Hall filed a motion for relief from judgment under Rule 60(b). Hall argued that applying the district court’s May 19, 2006 judgment dismissing his petition prospectively was no longer equitable under Rule 60(b)(5), and that extraordinary circumstances existed under Rule 60(b)(6).
The district court granted Hall’s motion under Rule 60(b)(6), finding that extraordinary circumstances — an intervening change in law, i.e., Sherrors v. Woodford— warranted relief from judgment. The district court then concluded that habeas relief was warranted based on the erroneous instruction of CALJIC 2.15. The State appealed both the grant of Rule 60(b)(6) relief and habeas relief.
DISCUSSION
1. Rule 60(b) Motion
A district court’s grant of relief from judgment under Federal Rule of Civil Procedure Rule 60(b) is reviewed for abuse of discretion. Casey v. Albertson’s, Inc, 362 F.3d 1254, 1257 (9th Cir. 2004). “A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact.” Id. Any questions of law underlying the district court’s decision are reviewed de novo; Jeff D. v. Kempthorne, 865 F.3d 844, 850-51 (9th Cir. 2004).
Under Rule 60(b), a district court may relieve a party from a final judgment in certain circumstances.[2] Fed. R. Civ. P. 60(b). In the habeas context, Rule 60(b) applies to the extent that it is not inconsistent with the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”). Gonzalez v. Crosby, 545 U.S. 524, 529, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) (citing 28 U.S.C. § 2254 Rule 11 and Fed. R. Civ. P. 81(a)(2)). AEDPA poses significant hurdles for a Rule 60(b) petitioner, but “Rule 60(b) has an unquestionably valid role to play in habeas cases.” Gonzalez, 545 U.S. at 534, 125 S.Ct. 2641.
The State argues that Hall’s Rule 60(b) motion runs afoul of three of AEDPA’s provisions: (1) the bar on second or successive petitions under 28 U.S.C. § 2244(b)(1); (2) the one-year statute of limitations under 28 U.S.C. § 2244(d); and (3) the exhaustion rule under 28 U.S.C. § 2254(b). In addition, the State argues that the district court abused its discretion by granting relief under Rule 60(b)(6). For the reasons discussed below, we disagree.
A. AEDPA’s Bar on Second or Successive Petitions
Under AEDPA’s second or successive petition provisions, any claim that has been adjudicated in a previous petition must be dismissed. 28 U.S.C. § 2244(b)(1). The State argues that Hall’s Rule 60(b) motion is a disguised successive habeas petition that asserts a previously adjudicated claim and therefore the district court *985 should have dismissed it pursuant to § 2244(b)(1).
While there is no bright-line rule for distinguishing between a bona fide Rule 60(b) motion and a disguised second or successive habeas petition, the Supreme Court’s decision in Gonzalez v. Crosby informs our analysis. See Jones v. Ryan, 733 F.3d 825, 834 (9th Cir. 2013). In Gonzalez, the district court dismissed Gonzalez’s ha-beas petition as untimely, and the Eleventh Circuit Court of Appeals denied a certificate of appealability. 545 U.S. at 527, 125 S.Ct. 2641. After a change in law regarding the statute of limitations, Gonzalez filed a Rule 60(b) motion challenging the district court’s dismissal. Id. Both the district court and the Eleventh Circuit ruled that Gonzalez could not seek Rule 60(b) relief because the motion was a disguised second or successive petition. Id. at 528, 125 S.Ct. 2641. The Supreme Court disagreed. The Court held that Gonzalez’s Rule 60(b) motion challenged the district court’s earlier ruling on a non-merits aspect of the proceedings — statute of limitations — and therefore it was not equivalent to a successive habeas petition. Id. at 533-34, 125 S.Ct. 2641.
Thus, according to Gonzalez, a bona fide Rule 60(b) motion “attacks, not the substance of the federal court’s resolution of a claim on the merits, but some defect in the integrity of the federal habe-as proceedings.” Id. at 532, 125 S.Ct. 2641. In contrast, a second or successive habeas corpus petition “is a filing that contains one or more ‘claims,’ ” defined as “asserted federal bases for relief from a state court’s judgment of conviction.” Id. Put another way, “if neither the motion itself nor the federal judgment from which it seeks relief substantively addresses the federal grounds for setting aside the movant’s state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules.” Id. at 533, 125 S.Ct. 2641.
Hall’s motion conforms to Gonzalez’s description of a true Rule 60(b) motion. First, the federal judgment from which Hall seeks relief — the order dismissing his petition for failure to comply with the district court’s July .25, 2006 exhaustion order — does not substantively address the federal grounds for setting aside his conviction. The dismissal was based on Hall’s failure to comply with the district court’s exhaustion order; it was a non-merits-based ruling. Second, Hall’s Rule 60(b) motion only explains the circumstances why his original petition was dismissed, i.e. that Hall failed to comply with the court’s exhaustion order because he believed he had eo-submitted another há-beas petition with Sherrors. Hall’s motion to reopen does not present any substantive ground for setting his conviction aside. Therefore, because neither the district court’s dismissal nor Hall’s motion to reopen address the merits for setting Hall’s conviction aside, allowing the motion to proceed is not inconsistent with AEDPA. Id. at 533, 125 S.Ct. 2641.
Our conclusion is further supported by this court’s decision in Butz v. Mendoza-Powers, 474 F.3d 1193 (9th Cir. 2007) (per curiam). In Butz, Petitioner Butz applied for authorization to file a second or successive habeas petition under 28 U.S.C. § 2254 after his original petition was correctly dismissed for failure to pay the filing fee. 474 F.3d at 1194. Butz claimed that his first petition had been dismissed due to neglect by his prior counsel, despite Butz’s own diligence. Id. This court held that when “the district court dismisses the [habeas] petition for failure to pay the filing fee or to comply with the court’s orders, the district court does not thereby reach the ‘merits’ of the claims presented in the petition and a Rule 60(b) motion *986 challenging the dismissal is not treated as a second or successive petition.” Id. (emphasis added). Like in Butz, Hall “does not seek to add new claims to his petition or to adduce new evidence or cite new law in support of' claims previously adjudicated on the merits.” Id. at 1195. Like in Butz, Hall simply failed to comply with the court’s order and, as a result, his petition was dismissed. Like in Butz, we conclude that the district court’s dismissal of the petition does not preclude Hall from filing a Rule 60(b) motion. See id. (“Because a Rule 60(b) motion by Butz would not be the equivalent of a second or successive habeas petition, his application for authorization to file such a petition is unneces-. sary.”).[3]
• In sum, we agree with the’ district court that Hall’s Rule 60(b) motion is a true Rule 60(b) motion and does not run afoul of AEDPA’s bar against second or successive petitions.
B. AEDPA’s Statute of Limitations
The State argues that even if Hall’s Rule 60(b) motion were a true Rule 60(b) motion (meaning it did not raise a “claim” within the meaning of Gonzalez), it is still an “application” for relief to which the district court was required to apply AED-PA’s statute of limitations before considering any of the discretionary provisions contained in Rule 60(b).[4] We reject this contention. As the Supreme Court made clear in Gonzalez, an “ ‘application’ for ha-beas relief is a filing that contains one or more ‘claims.’ ” Gonzalez, 545 U.S. at 530, 125 S.Ct. 2641. Because Hall’s Rule 60(b) motion did not contain any “claim,” supra I.A.1, it is not an application for habeas relief, and therefore AEDPA’s statute of limitations does not apply See id. at 533, 125 S.Ct. 2641 (“[Wjhen no ‘claim’ is present, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application.”).
C. Exhaustion under AEDP A
In its reply brief, the State argues that Hall’s petition contained an unexhausted claim both before the dismissal and after the district court granted relief under Rule 60(b), and therefore, the use of Rule 60(b) to reopen Hall’s case is inconsistent with AEDPA.
It is true that Hall initially presented an unexhausted claim in his habeas petition, which prompted the district court to order Hall to either voluntary dismiss the entire petition or formally abandon the unex-hausted claim. Hall requested an extension to file a formal abandonment, signaling a desire to proceed with the second option. When Hall contacted the district court again on May 29, 2009 with the intent to “join” his co-defendant’s successful habeas petition, Hall mentioned only the CALJIC *987 2.15 claim, which Hall had already exhausted in state court in 2003. Hall did not mention the unexhausted claim. The district court, liberally construing this pro se petitioner’s motion, interpreted Hall’s motion to join as a “motion to reopen his Petition for Writ of Habeas Corpus filed in this case on January 3, 2005 and to proceed on the exhausted first and third claims for relief.” In other words, the district court interpreted Hall’s motion to join as both a motion to reopen and a formal abandonment of the second unexhausted claim. This was a fair and logical interpretation of Hall’s motion given the procedural history of the case. As noted above, Hall had previously indicated a desire to abandon the unexhausted claim. His “motion to join” confirmed this desire. Given that no unexhausted claim was presented or considered, we find no inconsistency with AEDPA.
D. Relief under Rule 60(b) (6)
As stated above, Rule 60(b) “allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.” Gonzalez, 545 U.S. at 528, 125 S.Ct. 2641. Rule 60(b)(6), the provision under which Hall brought his motion, permits reopening for “any ... reason that justified relief’ other than the enumerated reasons set forth in Rule 60(b)(1) — (5).[5] Fed. R. Civ. P. 60(b). A movant seeking relief under Rule 60(b)(6) must show “extraordinary circumstances justifying the reopening of a final judgment.” Gonzalez, 545 U.S. at 535, 125 S.Ct. 2641. Although such circumstances occur rarely in the habeas context, Rule 60(b)(6) can and should be “used sparingly as ah equitable remedy to prevent manifest injustice.” United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).
“[T]he decision to grant Rule 60(b)(6) relief is a ease-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court’s conscience that justice be done in light of all the facts.” Phelps v. Alameida, 569 F.3d 1120, 1133 (9th Cir. 2009) (quoting Stokes v. Williams, 475 F.3d 732, 736 (6th Cir. 2007)). In applying Rule 60(b)(6) in habeas cases, we have considered six factors described in Phelps v. Alameida: (1) a showing of extraordinary circumstances, such as a change in intervening law; (2) the petitioner’s exercise of diligence in pursuing the issue during federal habeas proceedings; (3) interest in finality; (4) delay between the finality of the judgment and the motion for Rule 60(b)(6) relief; (5) degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought; and (6) comity. See id. at 1135-40. But we have stated that these factors are not “a rigid or exhaustive checklist.” Id. at 1135. Rather, “Rule 60(b)(6) is a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice.” Id. (internal citations and quotation marks omitted).
This is an especially unique case in which a perfect storm produced a situation in which Hall would have been subject to “manifest injustice” if not for Rule 60(b)(6). See Alpine Land & Reservoir Co., 984 F.2d at 1049. Most notably, this case involves a petitioner whose habeas petition *988 was dismissed without reaching the merits of his claim, while his co-defendant was granted habeas relief on the same claim based on the same error from the same trial. Given these key facts, Hall’s motion for relief under Rule 60(b)(6) is based on more than just a plea that a misunderstanding occurred. These extraordinary circumstances are the reason for Hall’s failure to comply with the district court’s January 25, 2006 order, and therefore, the reason his petition was dismissed. We cannot say that the district court was wrong in recognizing that extraordinary circumstances warrant the reopening of Hall’s case here. See Buck v. Davis, — U.S. -, 137 S.Ct. 759, 778, 197 L.Ed.2d 1 (2017) (“In determining whether extraordinary circumstances are present, a court may consider a wide range of factors,” including “the risk of injustice to the parties.”).
Moreover, we cannot find fault with the district court’s determination that Hall proceeded diligently or that the delay between the dismissal of Hall’s petition and the filing of his motion to reopen was reasonable. We have said that reasonable diligence “does not require an overzealous or extreme pursuit of any and every avenue of relief;” instead, it “requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances.” Brooks v. Yates, 818 F.3d 532, 535 (9th Cir. 2016) (quoting Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011)). Hall, a pro se litigant,[6] relied on his co-defendant’s assurances that his claims were being advanced in the co-defendant’s proceedings. The California Court of Appeal and the California Supreme Court adjudicated Hall’s case in conjunction with that of his co-defendant’s. With this in mind, and having great familiarity with the procedural history and circumstances of this case, the district court concluded that Hall was diligent and his delay was reasonable.
Further, we disagree with the State’s contention that the district court “minimized” the State’s interests in finality and comity. In Sherrors, this court ruled that the very same trial and resulting conviction was constitutionally compromised. The State could not in good faith argue reliance on the finality of Hall’s conviction because there had been no finality for Sherrors, Hall’s co-defendant. Accordingly, the State’s interest in finality deserved “little weight.” Cf. Buck, 137 S.Ct. at 779 (noting that the State’s interest in finality “deserved little weight” where the State acknowledged error in similar cases). Similarly, the State cannot argue that a second retrial will harm and prejudice the State. The State received this court’s decision affirming the grant of habeas relief in Sherrors v. Woodford on March 31, 2011. Thereafter, it chose to oppose Hall’s motion to join on December 12, 2011. Had the State truly been concerned with efficiency, it could have opted to retry Sherrors and Hall together in lieu of its opposition to the motion to join and subsequent appeal.
For these reasons, we affirm the district court’s grant of Rule 60(b) relief to Hall.
II. Habeas Relief
A. AEDPA Review of the State Court’s Instructional Error Determination
We review a district court’s decision on a petition for writ of habeas corpus de novo. Deck v. Jenkins, 814 F.3d 954, 978 (9th Cir. 2016). Because Hall’s petition is governed by AEDPA, Hall can prevail *989 on a claim that was adjudicated on the merits in state court only if he can show that the adjudication:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).
Under the “contrary to” clause, a federal habeas court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the “unreasonable application” clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court’s decisions but unreasonably applies that principle to the facts of the petitioner’s case. Id.
On direct appeal in Hall’s case, the California Court of Appeal determined that it was error to instruct the jury on CALJIC 2.15, but affirmed Hall’s conviction, concluding that the error was harmless. In doing so, the California Court of Appeal did not find the error to be of constitutional magnitude, and consequently applied the harmless error standard set forth in People v. Watson.[7] As discussed below, the California Court of Appeal’s decision was an unreasonable application of clearly established federal law.
The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment “protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” Francis v. Franklin, 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). “This bedrock, axiomatic and elementary constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.” Id. (internal quotation, marks, citations, and alternations omitted).
In this case, the State used CALJIC 2.15,[8] a jury charge that allows, *990 but does not require, a jury to infer a specified conclusion if the government has proved certain predicate facts, also known as a permissive inference. Schwendeman v. Wallenstein, 971 F.2d 313, 316 (9th Cir. 1992). “A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.” Francis, 471 U.S. at 314, 105 S.Ct. 1965; see also Cty. Court of Ulster Cty. v. Allen, 442 U.S. 140, 156-57, 165, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (explaining that a lack of “rational connection” between the presumed fact and the proven facts would render such a permissive inference invalid under the Due Process Clause). Put another way, “[a] permissive inference is constitutional so long as it can be said ‘with substantial assurance’ that the inferred fact is ‘more likely than not to flow from the proved fact on which it is niade to depend.’ ” United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir. 1992) (en banc) (quoting Ulster Cty., 442 U.S. at 166 n.28, 99 S.Ct. 2213).
In People v. Prieto, the California Supreme Court held that use of CALJIC 2.15 in nontheft offenses is improper because “[pjroof a defendant was in conscious possession of recently stolen property simply does not lead naturally and logically to the conclusion the defendant committed a rape or murder.” 30 Cal. 4th 226, 249, 133 Cal.Rptr.2d 18, 66 P.3d 1123 (2003) (emphasis added) (internal quotations omitted) (quoting People v. Barker, 91 Cal. App. 4th 1166, 1176, 111 Cal.Rptr.2d 403 (2001)). Here, the California Court of Appeal, relying on Prieto, held that it was error to instruct the jury on CALJIC 2.15. The California Court of Appeal failed to recognize, however, that the instructional error was of constitutional magnitude.[9]
Under clearly established Supreme Court law, the trial court violated Hall’s federal due process rights by instructing the jury that it could presume Hall murdered Foth from the fact that Hall possessed Foth’s property (plus “slight” corroborating evidence) because the presumed fact does not follow from the facts established. See Francis, 471 U.S. at 314-15, 105 S.Ct. 1965; Ulster Cty., 442 U.S. at 156-57, 99 S.Ct. 2213. Although the Prieto court did not expressly discuss federal due process, Prieto relied on People v. Barker, which does discuss it, and Prieto used the same sort of language that the Supreme Court used in Francis and Ulster County to describe when a permissive inference jury instruction is unconstitutional. An inference that is not “naturalf] or logical[],” as Prieto described, is exactly the kind of inference not justified by “reason or common sense,” see Francis, 471 U.S. at 314, 105 S.Ct. 1965, and not “flowing] from the proved fact,” see Ulster Cty., 442 U.S. at 166 n.28, 99 S.Ct. 2213.
The dissent asserts that the instructional error in this case is only one of state law because Prieto never says that the permis *991 sive inference from CALJIC 2.15 is “irrational.” Dissent at 998-99. But this overly critical argument about word choice misses the point. Francis never uses the word “irrational.” And while Ulster County refers to a “rational connection” between inferred fact and proved fact, 442 U.S. at 156-57, 99 S.Ct. 2213, it also explains that whether “the presumed fact is more likely than not to flow from the proved fact” is how we determine whether a permissive inference is constitutional. 442 U.S. at 166 n.28, 99 S.Ct. 2213. Ultimately, the seminal Supreme Court cases on this issue all say the same thing: a permissive inference violates due process when the presumed fact does not follow from the facts established. See Francis, 471 U.S. at 314-15, 105 S.Ct. 1965; Ulster Cty., 442 U.S. at 166 n.28, 99 S.Ct. 2213.
The relevant inquiry to determine whether the instructional error was of constitutional magnitude is whether the suggested conclusion — that Hall murdered Foth — is one that reason and common sense justify in light of the proved fact that Hall was in possession of Foth’s ring some time after Foth was killed. Proof that Hall possessed Foth’s ring does not make it “more likely than not” that Hall murdered Foth. The use of CALJIC 2.15 in this case constitutes an instructional error of constitutional magnitude, and the California Court of Appeal’s determination otherwise was objectively unreasonable. See Ulster Cty., 442 U.S. at 166, 99 S.Ct. 2213.[10]
B. Brecht Harmless'Error Review
But the inquiry does not end the conclusion that the state court’s decision was unreasonable in finding no constitutional violation. Habeas relief on a trial error claim is appropriate only if the error results in “actual prejudice.” Davis v. Ayala, — U.S. -, 135 S.Ct. 2187, 2197, 192 L.Ed.2d 323 (2015) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Under the Brecht test for actual prejudice, “relief is proper only if the federal court has ‘grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury’s ver- *992 diet.’ ” Mays v. Clark, 807 F.3d 968, 980 (9th Cir. 2015) (quoting Ayala, 135 S.Ct. at 2197-98).
The Brecht standard is so stringent that it “subsumes” the AED-PA/Chapman standard for review of a state court determination of the harmlessness of a constitutional violation. Deck v. Jenkins, 814 F.3d at 954, 985 (quoting Fry v. Pliler, 551 U.S. 112, 120, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)). We need not apply both a Brecht review and an AED-PA/Chapman review because “[a] determination that the error resulted in ‘actual prejudice’ [under Brecht] necessarily means that the state court’s harmless error determination was not merely incorrect, but objectively unreasonable.” Id.
Even if we were to separately analyze the state court’s harmless error determination under AEDPA/Chapman before engaging in a separate Brecht analysis, we would find that the California Court of Appeal’s harmless error determination was objectively unreasonable. As discussed above, instructing the jury on CALJIC 2.15 violated Hall’s due process rights, and therefore harmless error should have been analyzed under the Chapman standard for constitutional violations. See Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding that a “harmless beyond a reasonable doubt” standard applies to constitutional trial type errors). It was an unreasonable application of clearly established federal law for the California Court of Appeal to evaluate Hall’s claim under the less stringent Watson standard.
Our Brecht analysis also reveals that the state court’s harmless error determination was unreasonable because the instructional error resulted in actual prejudice. Like the two magistrate judges, the two district court judges, and another panel majority of our court that have reviewed this trial error under Brecht, we have “grave doubts” about whether the jury, without having heard the erroneous CALJIC 2.15 instruction, would have found Hall guilty beyond a reasonable doubt. The State’s case against Hall relied overwhelmingly on the testimony of Lena Hixon, whose story changed numerous times before trial and whose statements under oath were contradicted by the objective evidence at trial and by the other witnesses.
First, it is nearly impossible to believe Hixon’s testimony of the timeline of events given the judicially noticed distance between the different locations where each event allegedly took place. Second, Hixon lied about using and possessing Foth’s property. She testified that she never saw, touched, or took any of Foth’s property or used Foth’s cell phone. But phone records showed that days after the murder, Hixon used Foth’s phone to call a customer and her fingerprints were found on some of Foth’s belongings. In addition, months after the crime, a woman by the name of Mikiisha Perine found incriminating items among those she was storing on behalf of Hixon’s boyfriend, Michael Washington. Perine found a blue purse containing Hix-on’s social security card, Ko’s Visa and Costco cards, Foth’s ATM card, and three of Foth’s business cards. Third, Hixon downplayed her own involvement in the crimes. Initially, Hixon denied ever stabbing Foth. Then, she told police that she did stab Foth once, but that Sherrors forced her to stab Foth. Then, she told fellow inmate Katherine Davis that she used her shirt over the knife to avoid leaving fingerprints and that she was surprised at how the knife felt as it went into the body. In addition, Hixon testified that she broke a fingernail when Sherrors grabbed her at the crime scene, but later she told Davis she broke it while she was *993 holding Foth down or helping drag his body. Lastly, Hixon lied or changed her story regarding several other details of the night of the murder. Most notably, Hixon first identified two other men as the killers, but later pointed her finger at Sher-rors and Hall. She also told police that Foth approached her for cocaine, but she told Davis that Foth approached her for sex. She also testified that a shirt found at the crime scene belonged to Sherrors, but forensic testing eliminated Sherrors, Hall, and Hixon as habitual wearers of the shirt.
Given these non-trivial inconsistencies, the jury could have disbelieved Hixon entirely. After all, she had a motive to lie; she was offered a plea agreement in exchange for her testimony against Sherrors and Hall. Aside from Hixon, the only other evidence against Hall was his possession of Foth’s ring and his presence as a passenger in the Audi. No physical evidence linked Hall to the murder.
CALJIC 2.15 invited and encouraged the jury to infer that Hall was guilty of murder from his possession of Foth’s ring plus “slight” corroborating evidence. The instruction defined “slight” corroborating evidence as the “attributes of possession (time, place and manner), opportunity to commit the crime, and defendant’s conduct.” This allowed the jury to infer that Hall committed the murder based on the “time, place, and manner” of his possession; in other words, the jury may have been encouraged to infer that Hall committed the murder based on the mere fact that he was in possession of the ring and a passenger in the Audi in the days after the murder. As already discussed, such an inference is illogical and improper. Because Hixon’s testimony was unbelievable and because of the lack of other evidence linking Hall to the murder, we have grave doubts about whether the jury would have found Hall guilty beyond a reasonable doubt without the unconstitutional permissive instruction.[11]
CONCLUSION
We conclude that Hall’s Rule 60(b) motion was not inconsistent with AEDPA’s bar on second or successive petitions, AEDPA’s statute of limitations, or AED-PA’s exhaustion requirement. The district court did not err in reviewing Hall’s Rule 60(b) motion and it did not abuse its discretion in reopening Hall’s case under Rule 60(b)(6). Further, we conclude that habeas relief is warranted. Therefore, we AFFIRM the district court’s order granting Hall’s motion to reopen under Rule 60(b) and we AFFIRM the district court’s *994 order that conditionally granted the First Amended Petition for Writ of Habeas Corpus unless the State grants Petitioner a new trial within 90 days from the date of this opinion.
AFFIRMED.

. Hall and Sherrors were represented by counsel at trial.

. The district court may relieve a party from a final judgment for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.
Fed. R. Civ. P. Rule 60(b).

. The State attempts to distinguish Butz by pointing out that Butz (1) arose from a gatek-eeping motion filed under 28 U.S.C. § 2244(b)(3)(A); and (2) concerned a procedural dismissal with prejudice rather than a dismissal without prejudice. Nothing in Butz suggests that its holding was limited to gatek-eeping motions or dismissals with prejudice and the State has offered no argument as to why these two facts were crucial to the court's decision.

. The State, relying on a footnote from Gonzalez, believes Hall’s Rule 60(b) motion to be an "application” because the district court's dismissal of Hall's original petition rested on a correct ruling rather than an erroneous ruling. In this Gonzalez footnote, the Court further explained the term "on the merits,” stating that a habeas petitioner does not make a "claim” when he "merely asserts that a previous ruling which precludes a merits determination was in error.” Gonzalez v. Crosby, 545 U.S. 524, 532 n.4, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005). The footnote simply provided an example of when a claim exists; it was not intended as the definition of a claim.

. Before the district court, Hall also argued for relief under Rule 60(b)(5). The district court did not grant relief under Rule 60(b)(5) and Hall does not argue that it applies now. Therefore, we do not address whether relief under Rule 60(b)(5) would have been appropriate.

. When Hall filed his original federal habeas petition on January 3, 2005, he was pro se. Later on, on March 12, 2012, the district court appointed counsel to assist Hall in reopening his habeas proceedings under Rule 60(b).

. The Watson standard is used to review non-constitutional, trial type errors. Watson requires a reviewing court to determine whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.” 46 Cal. 2d 818, 836, 299 P.2d 243 (1956). In contrast, the more stringent standard, under Chapman v. California, is used to review errors of constitutional magnitude, which requires a reviewing court to decide whether the error was "harmless beyond a reasonable doubt.” 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

. As a reminder, CALJIC 2.15 states: If you find that a defendant was in possession of recently stolen property, the fact of that possession is not by itself sufficient to prove an inference that the defendant is guilty of the crime of murder. Before guilt may be inferred, there must be corroborating evidence tending to prove a defendant’s guilt. However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt.
As corroboration, you may consider the attributes of possession, time, place and manner; that the defendant had an opportunity to commit the crime charged; the defendant’s conduct; his false or contradictory statements, *990 if any; and any other statements that may have been made with reference to the property-

. California courts have .disagreed that this instructional error is of a constitutional magnitude. See, e.g., People v. Hayes, No. D060781, 2013 WL 3187230, at *20 (Cal. Ct. App. June 25, 2013) (unpublished) ("Our Supreme Court has repeatedly held that the Watson standard applies in this context, and has expressly rejected the contention that the error in question is one of constitutional magnitude.” (internal citations omitted)); People v. Moore, 51 Cal. 4th 1104, 1132-33, 127 Cal.Rptr.3d 2, 253 P.3d 1153 (2011) (applying the Watson standard and reasoning that Prieto does not mean "drawing a connection between possession and guilt is irrational”). We disagree.

. The dissent argues that the California Court of Appeal did not address Hall's claim that the jury instruction violated the federal constitution, so there is no reasoned decision on that claim. Accordingly, the dissent contends that we should use the gap-filling approach from Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), which applies when there is no reasoned decision on a particular claim. We disagree and note that throughout the lengthy litigation of this case, the State never has taken the position that Harrington applies.
The Harrington gap-filling approach applies when the state court fails to set forth any reasoning for denying a claim. That is not the case here.
In Hall’s brief to the California Court of Appeal, he argued that use of CALJIC 2.15 violated due process. Although the dissent contends that the California Court of Appeal addressed only why the use of CALJIC 2.15 was an error of state law, the Court of Appeal’s opinion also included grounds for rejecting Hall's constitutional argument. The California Court of Appeal relied on Prieto, which in turn relies on Barker, a case that discusses when a permissive inference instruction comports with due process. People v. Barker, 91 Cal. App. 4th 1166, 1174, 111 Cal.Rptr.2d 403 (2001). These cases provide enough insight into the state court's reasoning for rejecting Hall’s constitutional claim.
Regardless, even if we applied the gap-filling approach from Harrington, we would still hold that the result reached by the California Court of Appeal was unreasonable. The hypothetical “arguments or theories” that could have supported the denial of relief are, as the dissent suggests, that the permissive inference in CALJIC 2.15 is not "irrational” so it cannot amount to a violation of due process, or that the instruction was harmless even under Chapman. We have addressed those arguments in the body of our opinion.

. This court previously drew this conclusion in the case of Hall’s co-defendant, Sherrors. See Sherrors v. Woodford, 425 Fed.Appx. 617 (9th Cir. 2011). Though Sherrors is an unpublished memorandum disposition that is not binding on us, it is quite persuasive because the analysis arose from the very same trial. In fact, the State concedes that it assumed that our decision in Sherrors would be binding and that “if it were not for Johnson v. Williams, the State may not have taken this appeal.” We disagree that Johnson changes the result in this case.
In Johnson, the Supreme Court held that when a state court addresses some, but not all, of a defendant’s claims, the federal court on habeas review must presume, subject to rebuttal, that the unaddressed claims were adjudicated on the merits, thereby warranting AEDPA deference. 568 U.S. 289, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013). Our decision in Sherrors was consistent with this. In Sherrors, we applied AEDPA deference and concluded that the California Court of Appeal unreasonably applied established Supreme Court precedent when it "failed to recognized that the instructional error was of constitutional magnitude.” Sherrors, 425 Fed.Appx. at 619. The State misinterprets the intent of this sentence. We were not saying that the California Court of Appeal failed to address the instructional error claim. We were saying that its failure to find a constitutional violation was unreasonable. And we say the same here.